## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHRISTOPHER MARLOWE**[1] | * | |
| | * | |
| **VS.** | * | **CIVIL ACTION NO:** |
| | * | |
| **SECRETARY JAMES LEBLANC,** | * | **DIV:** |
| **DR. RAMAN SINGH, DR. PAM** | * | |
| **HEARN; TIMOTHY HOOPER,** | * | **JUDGE:** |
| **STEPHANIE MICHEL, MORGAN** | * | |
| **LEBLANC, [FIRST NAME UNKNOWN]** | * | **MAGISTRATE JUDGE:** |
| **CAMPBELL, DR. PREETY SINGH,** | * | |
| **GAIL LEVY, POLLY SMITH, FALLON** | * | |
| **STEWART, ELIZABETH** | * | |
| **GAUTHREAUX, AND OTHER (NAMES** | * | |
| **UNKNOWN) EMTs AT ELAYN HUNT** | * | |
| **CORRECTIONAL CENTER** | * | |

*************************************************************************

**FILED: _____**                 **_____**
                                                          **DEPUTY CLERK**

## COMPLAINT

### NATURE OF THE CASE

1.

While incarcerated at the Elayn Hunt Correctional Center ("EHCC"), Mr. Christopher Marlowe began experiencing several symptoms indicative of diabetes – including but not limited to tingling, pain and numbness in his feet, cracking skin on his feet, blurred vision, shakiness, frequent urination, significant weight loss, and extreme thirst and fatigue.

2.

Mr. Marlowe made several visits to EHCC's sick call station between September 2016 and November 2016.  However, the emergency medical technicians ("EMTs")

---

[1] Mr. Marlowe is entered into the Louisiana Department of Corrections system as "Christopher Marlone," DOC # 558-725.

staffing the sick call station misdiagnosed Mr. Marlowe and prevented him from seeing appropriate medical personnel who could assess his condition.  Mr. Marlowe's condition continued to decline.  He was eventually rushed to University Hospital in New Orleans to receive emergency medical treatment because his glucose had risen to a life-threatening level of nearly 900 mg/dl.  EHCC medical staff knew of Mr. Marlowe's potentially fatal glucose levels for at least four days before transporting him to University Hospital, where the hospital doctors diagnosed him with diabetes.

3.

Since Mr. Marlowe's diagnosis of this chronic, debilitating disease, EHCC's medical system and food services program have failed to accommodate his disability and provide appropriate care to which he is constitutionally entitled.

4.

Mr. Marlowe now files this complaint against the defendants based on:

**(1)**	their collective establishment of, and deliberate indifference toward policies, patterns, and practices that

(a)	maintain a deficient health care system that denies access to appropriate medical care to Christopher Marlowe and other Department of Corrections ("DOC") inmates housed at EHCC;

(b)	maintain a constitutionally deficient food/meal service which led to Christopher Marlowe developing diabetes and continues to exasperate his symptoms associated with his diabetes;

**(2)** constitutional and civil rights deprivations he has experienced due to the deliberately indifferent actions and omissions of the individual defendants who were medical and food service staff at EHCC;

**(3)** the Defendants medical malpractice and tortious action that has resulted in physical, emotional, and mental pain and suffering.

5.

By this Complaint, Mr. Marlowe seeks declaratory, injunctive, compensatory, and punitive relief, costs and attorney's fees, and any other relief to which he may by law or equity be entitled.

**JURISDICTION AND VENUE**

6.

This is an action for injunctive, declaratory, and monetary relief is brought pursuant to 42 U.S.C. § 1983, pursuant to the First, Eighth and Fourteenth Amendment rights of the United States Constitution, and pursuant to the Americans with Disabilities Act, the Americans with Disabilities Act Amendment, and the Rehabilitation Act.  Jurisdiction lies under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 2201. Mr. Marlowe asserts state law claims, and thus invokes supplemental jurisdiction of all state law claims under 28 U.S.C. § 1367.

7.

Venue for this action lies in this Court under 28 U.S.C. § 1391(b)(1)-(2) because all the Defendants reside in Louisiana and a substantial part of the events and omissions giving rise to the claims occurred in the Middle District of Louisiana.

**PARTIES**

8.

**Plaintiff:**

**Mr. Christopher Marlowe** is a person of the full age of majority who is currently incarcerated at Elayn Hunt Correctional Center in St. Gabriel, Louisiana.

9.

**Defendants:**

**STATE OF LOUISIANA** through the **DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS** (hereinafter "**DOC**"), a political subdivision and/or agency of the State of Louisiana, legislatively created and capable of suing and being sued;

**JAMES W. LEBLANC** (hereinafter "**SECRETARY LEBLANC**"), a person of the full age of majority and a resident of the State of Louisiana, in his official capacity as Secretary of the Louisiana **DOC**;

**DR. RAMAN SINGH** (hereinafter "**DR. RAMAN SINGH**"), a person of the full age of majority and a resident of the State of Louisiana, in his official capacity as the former medical and mental health director at the Louisiana **DOC**;

**DR. PAM HEARD** (hereinafter "**DR. HEARD**"), a person of the full age of majority and a resident of the State of Louisiana, in her official capacity as the medical and mental health director at the Louisiana **DOC**;

**WARDEN TIMOTHY HOOPER** (hereinafter "**HOOPER**"), a person of the full age of majority and a resident of the State of Louisiana, in his official and personal capacities as the Warden of Elayn Hunt Correctional Center, a facility owned and operated by the State of Louisiana through the Department of Public Safety and Corrections;

**DEPUTY WARDEN STEPHANIE MICHEL** (hereinafter "**MICHEL**"), a person of the full age of majority and a resident of the State of Louisiana, in her official and personal capacities as the deputy warden of medical care at EHCC, a facility owned and operated by the State of Louisiana through the Department of Public Safety and Corrections;

**ASSISTANT WARDEN MORGAN LEBLANC** ("hereinafter "**MORGAN LEBLANC**"), a person of the full age of majority and a resident of the State of Louisiana, in his official and personal capacities as the former assistant warden responsible for menu development and meal planning at EHCC.

**ASSISTANT WARDEN [FIRST NAME UNKNOWN] CAMPBEL** (hereinafter "**CAMPBELL**"), a person of the full age of majority and a resident of the State of Louisiana, in his official and personal capacities as an assistant warden responsible for menu development and meal planning at EHCC.

**DR. PREETY SINGH** (hereinafter "**DR. PREETY SINGH**"), a person of the full age of majority and a resident of the State of Louisiana, in her official and personal capacities as the medical director at EHCC.

**GAIL LEVY** (hereinafter "**LEVY**"), a person of the full age of majority and a resident of the State of Louisiana, in her individual and official capacities as the food manager at EHCC.

**POLLY SMITH** (hereinafter "**SMITH**"), a person of the full age of majority and a resident of the State of Louisiana, in her individual and official capacities as a former nurse practitioner at EHCC.

**FALLON STEWART** (hereinafter "**STEWART**"), a person of the full age of majority and a resident of the State of Louisiana, in his individual and official capacities as a former emergency medical technician ("EMT") at EHCC.

**ELIZABETH GAUTHREAUX** (hereinafter "**GAUTHREAUX**"), a person of the full age of majority and a resident of the State of Louisiana, in her individual and official capacities as an EMT at EHCC.

**OTHER (NAMES UNKNOWN) EMTs** (hereinafter "**UNKNOWN EMTs**"), individuals of the full age of majority and residents of the State of Louisiana, in their individual and official capacities.

10.

The above-named defendants are liable unto petitioner jointly, severally, and in solido in an amount in excess of the statutory amount required for trial by jury for the following reasons.

### FACTUAL ALLEGATIONS

11.

Mr. Marlowe – an armed services veteran – is currently incarcerated at EHCC and is in the custody of the Louisiana DOC pursuant to a 20-year sentence at hard labor.

12.

Mr. Marlowe entered into the custody of the DOC on or about September 24, 2009 in good health.  He was not experiencing any symptoms of diabetes and has no family known family history with the illness.

13.

The DOC is responsible for ensuring that Mr. Marlowe and other similarly situated inmates have access to well-balanced meals that contain sufficient nutrients to preserve their health.

14.

As demonstrated below, the meals provided to inmates at EHCC are deficient in nutrients with an unhealthy and disproportionate amount of refined sugar and high glycemic index carbohydrates – such as canned fruit, white rice, bread, cookies, cake, pancakes, grits, biscuits, bread pudding, rolls, cornbread, sheet cake, and pasta.  Refined sugar is also added to the recipes for beans and leafy greens.  Upon information and belief, with the exception of rice, everything served to inmates is cooked in lard – an oil with high a content of saturated fat.

**DEPARTMENT OF CORRECTIONS**
**CYCLE MENU - FISCAL YR 15-16**
**CYCLE 1**

R 06/04/2015

| MONDAY | | |
|---|---|---|
| **BREAKFAST** | **LUNCH** | **SUPPER** |
| Eggs - Fried/Scrambled/Boiled Grits Biscuits Butter Sugar x 2 Milk & Coffee | Roast (Beef or Pork/ends & pieces) Rice/Mashed Potatoes w/Gravy Farm Vegetable Rolls Bread Pudding Iced Beverage Salisbury Patty Non-Pork (if pork roast served) | Chili Mac Farm Vegetable Rolls Jello Iced Beverage |
| **TUESDAY** | | |
| **BREAKFAST** | **LUNCH** | **SUPPER** |
| Pancakes Breakfast Sausage Patty Syrup Sugar x 2 Juice & Coffee | Seasoned Red Beans w/ Meat Rice Farm Vegetable Cornbread Sheet Cake Iced Beverage | Franks w/Spaghetti Farm Vegetable Rolls Cookies Iced Beverage |
| **WEDNESDAY** | | |
| **BREAKFAST** | **LUNCH** | **SUPPER** |
| Creamed Beef Grits Biscuits Butter Sugar x 2 Milk & Coffee | Chicken Pot Pie w/ Vegetables Rice Farm Vegetable Rolls Cookies Iced Beverage | Cold Cuts w/Sliced Bread Farm Vegetable French Fries Mayo/Mustard/Catsup Sheet Cake w/Icing Iced Beverage |

15.

Specific lifestyle and diet choices can increase an individual's risk factor in developing diabetes.  Diets that contain high levels of refined sugars, saturated fat, and high glycemic index carbohydrates – like those at EHCC – can lead to weight issues and obesity.

Being overweight and obese are two of the greatest risk factors in developing several chronic illnesses including diabetes.

16.

The "canteen" is a store at EHCC that allows inmates to purchase additional food with personal money in their commissary. At all pertinent times to this complaint, the canteen did not offer heart-healthy foods for inmates to purchase. Specifically, there were no vegetables, fruits, or unsalted nuts for purchase. In addition, the canned meat available for purchase is high in sodium, and the fish is not affordable for inmates like Mr. Marlowe, who does not earn enough money through his prison job to make the purchase.

17.

During all pertinent times to this complaint, the only place where Mr. Marlowe could obtain fresh vegetables and grilled meat was (and remains) the Who Dat Café. There, a grilled chicken salad costs approximately $7, and a grilled filet of fish costs approximately $4. If Mr. Marlowe eats two meals a day at the Who Dat Café, he will spend between $300 and $400 a month on food. Mr. Marlowe only earns around $0.04/hour, making these healthy options financially inaccessible.

18.

Put simply, Mr. Marlowe has no choice but to eat the food provided to him by EHCC. Deficient and negligent meal planning by Defendants **HOOPER, MICHEL, MORGAN LEBLANC, CAMPBELL, LEVY** and other EHCC staff has resulted in a food service system at EHCC that lacks in sufficient nutrients to maintain inmate health and prevent the development of chronic illnesses like diabetes.

19.

Beginning around August 2016, Mr. Marlowe began experiencing tingling, pain and numbness in his feet, cracking skin on his feet, blurred vision, shakiness, frequent urination,

7

and extreme thirst and fatigue.  Mr. Marlowe also began experiencing rapid weight loss, losing approximately sixty pounds in a three-month period.  According to the American Diabetes Association, these are all typical symptoms of diabetes.

20.

On multiple occasions, Mr. Marlowe visited the EMTs handling the sick call station at EHCC to address these symptoms.

21.

Despite not being trained or qualified to make any kind of medical diagnoses, these EMTs assess the medical conditions of inmates who visit the sick call station, per custom and routine practice of EHCC.  Often times they provide over-the-counter medication to the inmate so that the inmate can withdraw their "sick call form" and not be charged for seeking medical services.

22.

Mr. Marlowe visited sick call at least four times between August 2016 and November 2016.  Each time, Defendants **STEWART, GAUTHREAUX,** and/or other **UNKNOWN EMTs** staffed the sick call station.

23.

At each encounter, Defendants **STEWART, GAUTHREAUX,** and/or other **UNKNOWN EMTs** told Mr. Marlowe that either anxiety, having the wrong shoes, athlete's foot, and/or dehydration caused his symptoms.

24.

On each occasion, Defendants **STEWART, GAUTHREAUX,** and/or other **UNKNOWN EMTs** provided him with over the counter medication like foot cream, Neosporin, Ibuprofen, and they encouraged him not to fill out a sick call form to see a doctor.

8

25.

Defendants **STEWART, GAUTHREAUX,** and/or other **UNKNOWN EMTs'** (incorrect) "diagnoses" of Mr. Marlowe were unprofessional, outside the scope of their position and training, and below the applicable standard of care they each owed him.

26.

As a direct result of the Defendants **STEWART, GAUTHREAUX,** and/or other **UNKNOWN EMTs'** medical malpractice, Mr. Marlowe 1) missed the opportunity to be screened for prediabetes, and 2) suffered with significant pain and suffering as his symptoms continued to worsen. Their actions fell below the applicable standard of care he was owed.

27.

Had Mr. Marlowe been examined by a nurse practitioner or doctor, instead of being told, for example, that he "had the wrong shoes" by EMTs, he could have been screened for the condition of prediabetes upon the onset of his symptoms and could have potentially avoided his eventual diagnosis of diabetes.

28.

Mr. Marlowe's symptoms continued and worsened. Eventually, Mr. Marlowe refused to discard his sick call form and was seen by Defendant nurse practitioner **SMITH** in early November. With deliberate indifference to Mr. Marlowe's health and well-being, defendant **SMITH** completely disregarded the obvious diabetic symptoms he displayed and dismissed his discomfort with a diagnosis of being "dehydrated" and "wearing the wrong shoes."

29.

Mr. Marlowe's symptoms did not improve, and on or about November 10, 2016, medical staff at EHCC drew Mr. Marlowe's blood. The tests results indicated that his glucose had risen to a life-threatening level of nearly 900 mg/dl.

30.

Upon information and belief, the medical staff instructed Defendant **STEWART** on November 11, 2016 to bring Mr. Marlowe to the acute treatment unit to undergo immediate treatment. With deliberate indifference to Mr. Marlowe's health and well-being, defendant **STEWART** ignored these commands and left Mr. Marlowe untreated and unaware of his potentially fatal condition.

31.

Neither Defendant **STEWART** nor EHCC medical staff addressed Mr. Marlowe's emergency glucose levels for another four days, when the facility finally transported him via ambulance to University Hospital in New Orleans to receive emergency treatment and to prevent him from slipping into a diabetic coma.

32.

University doctors diagnosed Mr. Marlowe with diabetes and told him he should have been dead in light of his extremely high glucose and A1C levels.

33.

While admitted at University Hospital, Mr. Marlowe's treating doctors educated him on appropriate lifestyle changes – including diet – that he should make in order to best manage his chronic illness. The doctors also went over his medication regimen, recommended that he have glucerna, and spoke about the need to schedule regular appointments concerning future eye, feet, physical therapy, and dental care.

34.

Upon information and belief, both Defendants **STEWART** and **SMITH** ceased working at EHCC shortly after they committed medical malpractice and constitutional violations against Mr. Marlowe.

35.

Defendant **SMITH**'s disregard of Mr. Marlowe's obvious medical needs amounts to medical malpractice and negligence.  Her actions fell below the applicable standard of care she owed and directly contributed in Mr. Marlowe's delayed diabetes diagnosis and unnecessary pain and suffering.

36.

Defendant **STEWART's** deliberate disregard of Mr. Marlowe's constitutional and statutory rights, health, and well-being directly resulted in Mr. Marlowe experiencing unnecessary and wanton pain and suffering, as he was left for over four days without essential medical treatment to bring his glucose levels under control.

37.

Defendants **HOOPER, MICHEL,** and **DR. PREETY SINGH** failed to properly supervise Defendants **SMITH** and **STEWART's** treatment of Mr. Marlowe.  Defendants **HOOPER, MICHEL,** and **DR. PREETY SINGH's** negligent actions and inactions fell below the standard of care they owe Mr. Marlowe.

38.

As experienced by Mr. Marlowe, the systemic and constitutional failures in EHCC's delivery of medical care begin with the facility's intake procedure and extend through the medical department's consistent failure to diagnose and/or properly treat illnesses, including severe, chronic, and even terminal illnesses.

39.

Defendants **DOC, HOOPER, MICHEL** and **DR. PREETY SINGH's** medical system at EHCC completely failed to screen and monitor Mr. Marlowe for prediabetes. The medical system should have been monitoring Mr. Marlowe (and all EHCC inmates) because the meal plans created by Defendants **MICHEL** and **LEVY** put him at greater risk of developing diabetes. Had EHCC's medical system been appropriately screening and monitoring Mr. Marlowe (and all EHCC inmates) for prediabetes, he would likely have been able to avoid the eventual progression to diabetes through lifestyle changes.

40.

Under Defendants **DOC, HOOPER, MICHEL** and **DR. PREETY SINGH's** medical system, it is EMTs who are delegated the responsibility and authority to determine whether a prisoner will be scheduled for an appointment with a doctor, and what, if any, treatment short of a doctor's appointment an ailing prisoner will receive. These EMTs lack the medical training and experience of physicians, certified physicians' assistants, or registered nurses.

41.

In Mr. Marlowe's case, untrained EMTs (Defendants **STEWART, GAUTHREAUX,** and/or other **UNKNOWN EMTs**) acted as gatekeepers to the medical care he needed. They incorrectly diagnosed him and prevented him from receiving the appropriate care that he needed.

42.

Defendants **DOC, SECRETARY LEBLANC, HOOPER, DR. PAM HEARN** and **DR. RAMAN SINGH** must have known, or should have known of the risk of not correcting the systemic failures in providing medical care to EHCC due to current federal and state litigation against the **DOC** and/or EHCC employees concerning these very issues. For example, defendant **DOC's** alleged unconstitutional pattern and practice of failing to

provide it's inmates constitutionally adequate medical care is the subject of another pending action, *Lewis et al. v. Cain* et al., no. 3:15-cv-318.  That complaint identifies the historical pattern and practice of denying or delaying inmates – like Mr. Marlowe – specialty care when needed.

43.

The diabetic care Mr. Marlowe has received at EHCC following his diagnosis continues to violate the federal and Louisiana Constitutions as well as the Americans with Disabilities Act, the Americans with Disabilities Act Amendment, and the Rehabilitation Act.

44.

As a diabetes patient, Mr. Marlowe now has a disability recognized and protected under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act.

45.

Unless persons with diabetes receive adequate care, they face the risk of serious, long-term complications including blindness, amputations of the lower extremities, kidney failure that may require dialysis or transplantation, nerve damage which causes numbness, pain and other nervous system problems, pneumonia, strokes, heart attacks, and death. Daily management of diabetes requires close attention to medication, dietary intake, and activity, with frequent monitoring of blood sugar. Patient education is essential to effective management, particularly regarding dietary requirements and how to meet them. The acute complications that result from too little or too much insulin in relation to activity and food intake must be recognized and treated promptly. In a correctional setting, comprehensive, coordinated care of diabetics requires an organized system of care directed by competent physicians who are well-informed regarding the current standards of care for diabetes.

46.

The medical system administered by Defendants **HOOPER, MICHEL** and **DR. PREETY SINGH** took more than a year to provide Mr. Marlowe with any educational information about his diabetes diagnosis and appropriate lifestyle choices he could make to help manage his condition.

47.

Menu planning is an integral part of diabetes management in correctional facilities, and the Americans with Diabetes Association recommends that diabetic inmates have access to a heart-healthy diet. Without access to an appropriate diet, consumption of certain food can actually worsen a diabetes diagnosis. Some recommendations for diabetics seeking a heart-healthy diet are to:

- Eat a balanced diet with plenty of high-fiber foods, such as fruits, vegetables, legumes, whole grains, and nuts;

- Reduce consumption of high-calorie, nutrient-poor foods and beverages;

- Eat fish, especially oily fish (such as salmon, trout, and mackerel) at least twice a week;

- Get at least 5-10% of daily calories from omega-6 fatty acids;

- Choose fat-free or low-fat dairy products;

- Limit daily consumption of foods high in saturated fats and cholesterol, such as red meat, whole-fat dairy products, shellfish, and egg yolks;

- Limit consumption of trans fatty acids (found in fast foods and commercially baked products) to less than 1% of total daily calories;

- Replace saturated and trans fats with unsaturated fats from plant and fish oils;

- Try to limit sodium intake to less than 1,500 milligrams a day; and

- Choose nutrient-rich fruits instead of beverages and processed foods that contain added sugars.

48.

14

Defendants **DOC, HOOPER, MICHEL, CAMPBELL, LEVY** and other EHCC staff serve meals to Mr. Marlowe (and presumably other diabetics) that do not reflect the above referenced recommendations. Rather, the "diet" meals he is given remain high in starch, saturated fat, simple carbohydrates, and high glycemic index carbohydrates.  In addition, Mr. Marlowe's meals do not include fresh fruit, vegetables, nuts, or oily fish. Instead, his fruit is canned and/or saturated in syrup.  Vegetables are never raw, but rather smothered with high saturated fats and are overcooked, diminishing their nutritional value. The only vegetables provided to inmates are boiled squash and smothered mustard greens. Everything, except rice, is cooked in lard.  The "diet meals" provided to Mr. Marlowe at the EHCC are identical to the regular meals, with the exception that the "diet meal" contains less salt.

49.

The lack of a heart-healthy diet necessary for inmates like Mr. Marlowe is a direct result of Defendants **DOC, HOOPER, MICHEL's, CAMPBELL and LEVY's** breach of the standard of care they owe Mr. Marlowe.

50.

The current food service system at EHCC is not just inaccessible and discriminatory to Mr. Marlowe because of his disability, but is also a danger to his health because consuming the food as presently served to him will worsen his diabetes condition.

51.

Defendants **DOC, HOOPER, DR. PREETY SINGH, MICHEL** and EHCC medical staff also continue to provide unconstitutional and discriminatory medical services to Mr. Marlowe based on his disability.

52.

Prevention and management of low blood sugar and ketoacidosis are necessary components of diabetes care. Prevention, recognition and management of these acute complications of diabetes are grossly inadequate at EHCC, as experienced by Mr. Marlowe.

53.

EHCC staff is also responsible for distributing prescription medications to prisoners through the pill call process.  Medication distribution and management is performed by security staff rather than nurses. During pill call, inmates are regularly forced to stand in line for extended periods of time, including outdoors and under harsh conditions. Just recently, Mr. Marlowe waited for over an hour in twelve-degree weather for his medication. His insulin shot was administered outside.  Pill calls do not occur at regular hours and prisoners are thus unable to adhere to regular medication regimens.

54.

Although Mr. Marlowe is not in possession of his prescriptions, he is expected to track his own need for prescription refills and request refills several days before the prescription runs out. The Defendants do not assist inmates in tracking this information, which causes lapses in prisoners' use of prescription medication.

55.

On at least five different occasions, Mr. Marlowe's insulin or metformin prescriptions were not refilled, causing him to both go without his required prescription and take expired medication.

56.

On another occasion, the staff handling pill call refused to give him insulin.  On several other occasions, the correctional officers distributing medication gave Mr. Marlowe the wrong medication.

57.

Since his diagnosis, Mr. Marlowe's blood glucose levels have also not been monitored at night or in between meals. Despite best practices, Mr. Marlowe is not provided with the equipment needed to monitor his blood sugar levels on his own.

58.

Defendants **DOC, HOOPER, MICHEL, DR. PREETY SINGH**, and other EHCC medical staff also do not provide Mr. Marlowe with glucerna, a simple over-the-counter supplement that would help Mr. Marlowe manage and minimize blood sugar spikes in between pill call when he is provided with his insulin prescription.

59.

Patients with diabetes have special primary care needs that must be attended to routinely in order to maintain proper health and prevent disease. For example, diabetics are prone to gum disease and need preventative dental care over and above that required by normal, healthy adults. Research suggests that treating gum disease can help improve blood sugar control in patients living with diabetes, decreasing the progression of the disease.

60.

Defendants **DOC, HOOPER, MICHEL, DR. PREETY SINGH**, and other EHCC medical staff also did not provide Mr. Marlowe with access to an oral hygienist to clean his teeth. Mr. Marlowe has never had his teeth cleaned by a dentist or oral hygienist while housed at EHCC.

61.

Prevention and management of chronic complications with eyes, feet, kidneys, nerves, and blood vessels are necessary components of diabetes care. Care for chronic diabetic complications is grossly inadequate at EHCC due to the failure to provide timely and effective treatment to prevent disabling damage to eyes, feet, and kidneys. Mr.

Marlowe is not regularly seen by a doctor at EHCC to evaluate him for chronic care issues related to diabetes.

62.

Now, when Mr. Marlowe is seen by a medical professional, it is by a rotating intern who evaluates him for less than ten minutes. He rarely sees the same individual more than once. Just like Mr. Marlowe's doctors at University Hospital, these interns recommend that he eat a heart healthy diet that is high in protein and includes vegetables. They also recommend that he receive glucerna and regular optometrist, dental, podiatrist, and physical therapy appointments.

63.

Since Mr. Marlowe's diagnosis, defendant **DR. PREETY SINGH** consistently overrides these recommendations. Her disregard of these doctors' recommendations contradict best practices in chronic care management of diabetes. Her actions fall below the applicable standard of care she owes Mr. Marlowe, and amount to medical malpractice and negligence.

64.

The care and treatment provided to Mr. Marlowe at EHCC is grossly inadequate in light of chronic illness. Defendants **DOC, HOOPER, MICHEL,** and **DR. PREETY SINGH** each know, but are deliberately indifferent to, the fact that this inadequate care and treatment has resulted in serious and substantial harm to Mr. Marlowe and continues to create a serious risk that he will suffer from chronic complication due to his diabetes diagnosis.

65.

Mr. Marlowe has exhausted all administrative remedies available to him through the administrative remedy process at EHCC.

## DAMAGES

66.

CHRISTOPHER MARLOWE, is entitled to reasonable damages for the following:

A.    Past, Present, and Future Medical Expenses;
B.    Past, Present, and Future Physical Pain and Suffering;
C.    Past, Present, and Future Mental Anguish;
D.    Past, Present, and Future Emotional Distress;
E.    Permanent Disability and Loss of Function;
F.    Loss of Enjoyment of Life;
G.    Past, Present, and Future Loss of Wages and Diminished Economic Horizons;
H.    All medical, hospital, doctors, injuries, pharmaceutical, and bills;
I.    Damages related to the civil rights violations he has endured as protected by federal law, and the federal and Louisiana Constitutions;
J.    Any other general or specific damages to which Mr. Marlowe is entitled to under the laws of the United States and Louisiana.

## CAUSES OF ACTION

**COUNT 1:    *Monell* Violation § 1983 Based on the Establishment of Policies, Patterns or Practices pursuant to which Mr. Marlowe and Other Inmates are Denied Access to Appropriate Medical Care.**

67.

The defendants named in this Count, **SECRETARY LEBLANC**, **HOOPER, DR. HEARN, DR. RAMAN SINGH, MICHEL,** and **DR. PREETY SINGH**, in their official capacities with the **DOC**, acting under color of law, violated Mr. Marlowe's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. They did so by establishing and maintaining policies, patterns, or practices that they knew would result in Mr. Marlowe and other inmates with diabetes being denied access to appropriate medical care. Furthermore, these named Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Mr. Marlowe, as described herein, but failed to do so.

19

68.

Mr. Marlowe repeats and re-alleges each and every allegation of this complaint.

69.

Mr. Marlowe was and remains to be individually harmed by these policies, patterns, or practices because they resulted in 1) a permanent physical disability; 2) the delayed diagnosis of diabetes; and 3) the ongoing constitutionally deficient chronic care in the management of his diabetes. These deprivations are the direct cause of significant pain and suffering experienced by Mr. Marlowe.

70.

At all pertinent times, the Defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional and civil rights of the plaintiff by establishing the above-described policies, patterns, or practices.

71.

The above-named defendants are therefore liable to the plaintiff for the violation of the constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

72.

**COUNT 2:** *Monell* **Violation § 1983 Based on the Establishment of Policies, Patterns or Practices pursuant to which Mr. Marlowe and Other Inmates are Denied Access to Food with Sufficient Nutrients to Preserve their Health.**

The Defendants named in this Count, **SECRETARY LEBLANC, HOOPER, MORGAN LEBLANC, MICHEL, CAMPBELL** and **LEVY,** in their official capacities, acting under color of law, violated Mr. Marlowe's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the

20

Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. They did so by establishing and maintaining policies, patterns, or practices that they knew would result in a constitutionally deficient food/meal service lacking in sufficient nutrients to preserve health that led to Mr. Marlowe's development of diabetes. Furthermore, these named Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Mr. Marlowe, as described herein, but failed to do so.

73.

Mr. Marlowe repeats and re-alleges each and every allegation of this complaint.

74.

Mr. Marlowe was individually harmed by these policies, patterns, or practices because they resulted in him developing diabetes. These deprivations are the direct cause of Mr. Marlowe's permanent physical disability and the significant pain and suffering he currently experiences. Collectively, these defendants acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and serious medical needs of Mr. Marlowe. Furthermore, these named Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Mr. Marlowe, as described herein, but failed to do so.

75.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional and civil rights of Mr. Marlowe by establishing the above-described policies, patterns, or practices.

76.

21

The above-named defendants are therefore liable to the plaintiff for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs*., 436 U.S. 658 (1978).

77.

**COUNT 3:    Constitutional Violation Based on Deliberate Indifference to Mr. Marlowe's Constitutional Right to Appropriate Medical Care**

Mr. Marlowe repeats and re-alleges each and every allegation of this complaint.

78.

The defendants named in this Count, **SMITH, FALLON,** and **DR. PREETY SINGH,** in their personal capacities, acting under color of law, violated Mr. Marlowe's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Eighth and Fourteenth Amendments of the United States Constitution; 42 U.S.C. § 1983; and Art. I §§ 2 and 20 of the Louisiana Constitution of 1974.

79.

The named Defendants collectively and individually, acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and serious medical needs of Mr. Marlowe.

80.

Mr. Marlowe further alleges that such acts as alleged herein are the proximate cause and cause in fact of the injuries sustained and the ongoing harm Mr. Marlowe has suffered due to the actions and omissions by the Defendants.

80.

**COUNT 4:    Americans with Disabilities Act, Americans with Disabilities Amendment Act, and Rehabilitation Act**

The Americans with Disabilities Act (hereinafter "ADA") prohibits public entities, including Defendant **DOC**, from denying "a qualified individual with a disability . . . the benefits of the services, programs, or activities of the public entity" because of the individual's disability. 42 U. S. C. § 12132.

81.

Mr. Marlowe repeats and re-alleges each and every allegation of this complaint.

82.

Defendant **DOC** is named in this count and responsible for all violations of the ADA committed by its hired and contracted staff at EHCC.

83.

The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A).

84.

The programs, services, and activities that Defendant **DOC** provides to prisoners include, but are not limited to, sleeping; eating; showering; toileting; exercising; safety and security; Angola's administrative, disciplinary, and classification proceedings; medical, mental health, and dental services; the library; educational, vocational, substance abuse, and other classes; and discharge services. Defendant **DOC's** programs, services, and activities are covered by the ADA.

85.

23

Under the ADA, Defendant **DOC** must provide prisoners with disabilities reasonable accommodations and modifications so that they can avail themselves of and participate in all programs and activities offered by Defendants.

86.

Defendant **DOC's** food services program and health care system at EHCC continue to discriminate and fail to accommodate Mr. Marlowe and his disability as described herein.

87.

As a result of Defendant **DOC's** discrimination against and failure to provide reasonable accommodations for Mr. Marlowe, he does not have equal access to prison activities, programs, and services for which he is otherwise qualified.

88.

At all times relevant to this action, Defendant **DOC** was the recipient of federal funding within the meaning of the Rehabilitation Act. As a recipient of federal funds, it is required to reasonably accommodate prisoners with disabilities in its facilities, programs, activities, and services, and to provide a grievance procedure.

89.

Mr. Marlowe is a qualified individual with disabilities as defined in the ADA, ADA Amendment Act, and Rehabilitation Act.

90.

By their policy and practice of discriminating against and failing to reasonably accommodate Mr. Marlowe's dietary and medical needs, the Defendant **DOC** continues to violate Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

91.

**COUNT 5:    Medical Malpractice**

24

Mr. Marlowe repeats and re-alleges each and every allegation of this complaint.

92.

The above-described actions and inactions of Defendants **DR. PREETY SINGH, SMITH, FALLON, GAUTHREAUX,** and other **UNKNOWN EMTs**, who were healthcare professionals charged with the care of Mr. Marlowe, fell beneath the applicable standard of care for such professionals and resulted in: 1) a missed opportunity to screen Mr. Marlowe for prediabetes; 2) the unreasonably delayed diagnosis of his diabetes; and 3) the ongoing disregard of best practices for the management of his chronic illness.  These defendants are therefore liable to the plaintiff for their intentional, reckless, and/or negligent actions.

93.

**COUNT 6:    Negligent and/or Intentional Conduct Resulting in Injury**

Mr. Marlowe repeats and re-alleges each and every allegation of this complaint.

94.

Defendants **DR. PREETY SINGH, SMITH, FALLON, GAUTHREAUX,** and other **UNKNOWN EMTs,** acting individually and collectively, and under color of law, engaged in a course of conduct that caused injury and harm to Mr. Marlowe. At all times pertinent herein, these defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards Mr. Marlowe.  Furthermore, these defendants, individually and collectively, had the duty and ability to intervene to prevent the tortious conduct of co-defendants toward Mr. Marlowe, as described herein, but failed to do so.  They are therefore liable to Mr. Marlowe for damages, as described herein.

95.

**COUNT 7:    Negligent Supervision**

Mr. Marlowe repeats and re-alleges each and every allegation of this complaint.

96.

Defendants **HOOPER, MICHEL,** and **DR. PREETY SINGH,** acting individually and collectively, and under color of law, engaged in a course of conduct and negligent supervision of those charged to care for Mr. Marlowe. The conduct, as described in Count 5, by Defendants **DR. PREETY SINGH, SMITH, FALLON, GAUTHREAUX,** and other **UNKNOWN EMTs** caused injury and harm to Mr. Marlowe. At all times pertinent herein, these defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards Mr. Marlowe. Furthermore, these defendants, individually and collectively, had the duty and ability to intervene to prevent the tortious conduct of other co-defendants toward Mr. Marlowe, as described herein, but failed to do so. They are therefore liable to Mr. Marlowe for damages, as described herein.

## RELIEF REQUESTED

**WHEREFORE,** Mr. Marlowe prays that this Honorable Court grant the following relief:

1. Declare the Defendants' conduct unlawful;

2. Enjoin the Defendants from taking adverse and/or retaliatory actions against Mr. Marlowe;

3. Issue an injunction that restrains, enjoins, and prohibits the Defendants from serving food that does not meet the medical needs of diabetic inmates like Mr. Marlowe;

4. Issue an injunction that restrains, enjoins, and prohibits the Defendants from denying Mr. Marlowe access to appropriate medical care, including timely distribution of his medication, access to equipment to monitor his glucose levels, and timely dental, eye, and podiatrist appointments;

5. Award compensatory, punitive, and all damages as prayed for herein;

6.    Award reasonable attorney's fees and costs;

7.    Trial by jury; and

8.    All other general and equitable relief that this Honorable Court deems appropriate under the circumstances.

Respectfully Submitted,

/x/ *Emily H. Posner*

_____
Emily H. Posner (La. Bar No. 35284)
7214 St. Charles Box 913
New Orleans, Louisiana 70118
Phone: (207) 930-5232
emilyposnerlaw@gmail.com

*Attorney for Christopher Marlowe*