# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER MARLOWE** | **CIVIL ACTION** |
| **VERSUS** | |
| **JAMES LEBLANC, ET AL.** | **NO.: 18-63-BAJ-EWD** |

## RULING AND ORDER

Before the Court is Plaintiff's **Motion for Temporary Restraining Order and/or Emergency Motion for Temporary Release (Doc. 93)**. Plaintiff has filed an Amended Memorandum in Support (Doc. 100), a Response (Doc. 102), and a Post-Hearing Reply (Doc. 110). Defendants filed an Opposition (Doc. 101) and Sur-Reply Memorandum in Opposition (Doc. 108). For the reasons stated herein, Plaintiff's **Motion (Doc. 93)** is **GRANTED IN PART** and **DENIED IN PART**.

**I.  FACTS**

Plaintiff seeks emergency relief authorizing his temporary supervised release, or other appropriate but unspecified forms of relief, while the spread of the COVID-19 virus remains a threat within the Louisiana Department of Corrections system. (Doc. 100 at p. 1). The Court notes that both the President of the United States and the Governor of Louisiana have declared a state of emergency in response to this pandemic[1]. As a diabetic, Plaintiff alleges that he is especially vulnerable to

---

[1] See, *Proclamation Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* issued March 13, 2020 by President Donald J. Trump.  See also, *Declaration of*

experiencing complications associated with the virus, which is actively circulating at the Rayburn Correctional Center ("Rayburn"), where he is assigned. (*Id.* at 1). According to the evidence presented at the hearing on the Motion, at least 25 people within the facility, including 23 inmates, have tested positive for COVID-19. (Doc. 110, at p. 1).

Plaintiff originally filed this action in 2018, alleging that Defendants, staff at the Elayn Hunt Correctional Center, exhibited deliberate indifference towards his medical needs and provided constitutionally deficient meal service that resulted in Plaintiff developing diabetes and that the failure to adequately treat his illness later exacerbated the symptoms. (Doc. 1, at ¶4). Plaintiff filed Amended Complaints, which Defendants have moved to dismiss. *See* (Doc. 84). While this case was pending, Plaintiff was transferred to the Rayburn. He now brings the instant Motion for Temporary Restraining Order and/or Emergency Motion for Temporary Release (Doc. 93).

The Court held a status conference on April 3, 2020 (Doc. 95) and an evidentiary hearing on April 7, 2020 (Doc. 109). Additionally, both parties have filed numerous memoranda to keep the Court apprised of evolving conditions at the facility.

In his Amended Memorandum in Support (Doc. 100), Plaintiff alleges that his medical condition places him "at extreme risk to develop life-threatening complications should he contract COVID-19." (Doc. 100 at p. 2). He argues that the

---

*Public Health Emergency in Response to COVID-19* issued March 11, 2020 by Governor John Bel Edwards.

primary steps recommended by the Governor to limit the spread of COVID-19 have not been and cannot be meaningfully implemented within the Department of Corrections because prisoners are housed in compact and confined spaces. *Id*. In his memorandum, Plaintiff alleges that he shares a dormitory with approximately 78 other inmates who sleep in bunk rows and share five toilets. (Doc. 110–1 at p. 56). During the evidentiary hearing, Plaintiff provided testimony about numerous common areas used by the prisoners, including a common water fountain, microwave ovens, telephones, and a common cafeteria. *Id*. at 56-61. He also testified that many prisoners do not take social-distancing measures seriously, that the Warden arranged for social distance markers to be removed from the floors, and that he had received no official guidance concerning social-distancing measures from prison officials. *Id*. at 64. As noted, at least 23 offenders at Rayburn have tested positive for COVID-19. (Doc. 110, at p. 1).

In opposition, Defendants allege that they are protected by Eleventh Amendment immunity and that the Plaintiff fails to sufficiently plead a claim of unconstitutional conditions. (Doc. 108, at p. 2). Defendants additionally argue that the Federal Rules of Civil Procedure do not allow a Plaintiff to request new relief or a new cause of action by way of the filing of a TRO, that Plaintiff lacks standing, and that Plaintiff failed to fully exhaust administrative remedies, which is typically a prerequisite to bringing a prisoner claim in federal court. *See* (Doc. 101).

## II.  LEGAL STANDARD

To obtain injunctive relief by way of a Temporary Restraining Order, Plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest. *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

## III.  DISCUSSION

### A. Jurisdiction

As an initial matter, the Court reviews its jurisdiction to consider the Motion. Defendants allege that it is improper for Plaintiff to allege new claims, not included in the initial complaint, through the filing of this TRO. While Defendants are correct that Plaintiff's Second Amended Complaint (Doc. 64) does not specifically address the outbreak of the novel coronavirus, it is fully premised upon Plaintiff's diabetes diagnosis and the prison facility's alleged inability to effectively provide medical care related to it.[2] Plaintiff has been moved to another facility, but remains within the custody of the Louisiana Department of Corrections, a named Defendant. An enhanced risk of contracting COVID-19 due to his condition, while not foreseeable at the time Plaintiff originally filed this lawsuit, stems from the same factual nexus as the original and amended Complaints.

---

[2] The underlying Complaint is premised upon allegations against personnel at the Elayn Hunt Correctional Center who allegedly contributed to Plaintiff's diagnosis of diabetes.

In addition to the factual similarities, the Court finds that it serves the interests of judicial economy to adjudicate the instant Motion within this ongoing case. The Court is sufficiently familiar with the claims and defenses asserted by the Parties and finds that an efficient resolution is warranted by the adjudication of the Motion by this Court, given the unique circumstances.

Next, the Court shall consider Plaintiff's standing to bring this claim. Defendants argue that Plaintiff has failed to allege an injury in fact because the potential harms complained of (contracting coronavirus and experiencing complications associated with it) are not sufficiently likely due to the procedures implemented at Rayburn to prevent the spread of COVID-19. (Doc. 101 at p. 5–6). However, the Court notes that when this Motion was filed, only two inmates had tested positive for COVID-19. As of April 13, 2020, less than two weeks later, that number had escalated to 25 infections among inmates and staff. (Doc. 110, at p. 1).

As noted, the exponential growth of the novel coronavirus has resulted in emergency declarations by the President and the Governor, as well as governors of numerous other states. Due to the nature of this virus, the Court finds that the risk of contracting the virus in a prison environment, where at least 23 inmates have already tested positive, poses a sufficiently high risk, rendering this matter ripe for adjudication even though Plaintiff has not contracted the virus. The United States Supreme Court has held that the risk of contracting a serious disease may indeed constitute an unsafe, life-threatening condition that violates the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993).

Further, the Supreme Court held that it would "be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id*. With the clear danger posed by COVID-19 in the Rayburn facility, Plaintiff has adequately demonstrated standing.

Regarding Defendants' assertion that Plaintiff failed to exhaust the administrative remedies available to him, Plaintiff admits that he did not exhaust administrative remedies and did not file a request to initiate the Administrative Remedy Procedure (ARP) related to this claim until April 7, 2020, after filing the instant Motion. (Doc. 102–2, at p. 2). Plaintiff initially contended that he could not file a claim because he lacked access to a computer and the ARP process had been closed because it was "non-essential."[3] (Doc. 102 at 5).

Generally, under the Prison Labor Reform Act ("PRLA"), pre-litigation exhaustion of available administrative remedies is mandatory for any suits brought under § 1983 by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002); *see also* 42 U.S.C. § 1997e(a). Despite the strict approach required within this Circuit concerning PLRA exhaustion requirements, the United States Court of Appeals for the Fifth Circuit has recognized that a district court must afford a prisoner an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from complying with them.

---

[3] Warden Robert Tanner testified at the hearing that this was not the case, and that ARP requests would be processed within 48 hours.

6

*Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (holding that, while the facts presented in that case did not justify excusal, PLRA exhaustion requirements may be excused where dismissal would be "inefficient and would not further the interests of justice or the purposes of the exhaustion requirement").

Here, the statutory 30-day period to adjudicate Plaintiff's administrative claim will not expire until May 7, at which point Defendants contend the Court may then properly hear this matter if it is not satisfactorily resolved through administrative proceedings sooner. Because of the nature of COVID-19, especially considering its ability to spread with great rapidity among densely populated communities, like prisons, the Court must reject Defendants plea and find that the interests of justice demand action by the Court on an emergency basis.[4] Further, the Court is vested with a traditional equitable power to issue injunctions to prevent irreparable injury, pending such exhaustion of administrative remedies. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008); *Jackson v. D.C.*, 254 F.3d 262, 268 (D.C. Cir. 2001). Due to the important implications of this case to the Plaintiff, the Court shall exercise its authority while the administrative proceedings brought by Plaintiff are still under review by prison authorities.

---

[4] The Centers for Disease Control and Prevention (CDC) issued specific guidelines pertaining to the spread of COVID-19 within correctional and detention facilities. The CDC explained that it was issuing guidance because detention facilities have a heightened risk for the spread of COVID-19 due to offenders living within congregate environments, the inability to leave, staff ingress and egress, transfers between facilities, and more. *See* CDC Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidancecorrectional-detention.pdf.

7

Lastly, sovereign immunity does not apply to Defendants with respect to the relief requested in the instant Motion. It is axiomatic that state officials acting in their official capacity can nonetheless be sued for prospective injunctive relief to correct ongoing violations of federal law. *Saahir v. Estelle*, 47 F.3d 758, 761 (5th Cir. 1995), *citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105, 104 S. Ct. 900, 910, 79 L. Ed. 2d 67 (1984). Here, Plaintiff seeks relief based on alleged ongoing violations of the Eighth Amendment of the United States Constitution. Thus, this Court is appropriately vested with jurisdiction to consider the claim.

### B. Request for Relief

Plaintiff's claim arises under the Eight Amendment, which, as he notes, may hold an official liable for "deliberate indifference." (Doc. 110, at p. 2). The Court has held conferences, conducted an evidentiary hearing and reviewed several filings in this case that all demonstrate the officials at Rayburn have taken numerous steps to implement policies to contain the spread of COVID-19 during these challenging times. While the number of infected inmates has grown, so too have the protective measures implemented at Rayburn by the DOC in response. Indeed, the demands made upon corrections officials in their effort to contain the spread of this pandemic within their facilities is unprecedented.

Robert Tanner, the warden at Rayburn, testified that meetings are held at least three times weekly to assess the facility's response to the coronavirus, often resulting in daily changes. (Doc. 110–1, at p. 26). He further testified that quarantined offenders receive masks, as do staff members and offenders assigned to

the kitchen, laundry, the infirmary, and anyone the medical director deems should wear a mask. (Doc. 110–1, at p. 33). Masks are also provided when "medically necessary."[5] Warden Tanner admitted that all offenders in the institution could be provided with a mask, if necessary. *Id*. at 33–34. Additionally, the guidelines provided by the DOC list numerous precautions being taken to handle the COVID-19 outbreak within the prison system. Such guidelines are applicable at Rayburn. Inmates who are asymptomatic, but have been in close contact with an inmate or employee confirmed or suspected to have COVID-19, are required to be quarantined for a minimum of 14 days. (Doc. 108–1, at p. 9). Defendants assert that these measures are adequate to protect Plaintiff from contracting the disease.

However, Plaintiff's credible testimony paints a very different picture. For example, Plaintiff testified that the common water fountain in his dormitory is not wiped clean after each use by the inmates. He also testified that telephones in the dormitory are spaced a mere 12 inches apart and that no prisoner separation procedures have been implemented in the area of the telephones. The microwave ovens made available to the offenders are not regularly cleaned and disinfected. Also, no procedures have been implemented to avoid chokepoints in the walkways in the dormitory. According to the Plaintiff, foot traffic often results in offenders and staff "almost touching" each other. During mealtimes, inmates allegedly stand in line in the cafeteria in a heel-to-toe fashion to receive meals. After receiving their meals, inmates sit directly next to one another at tables in the cafeteria. More troubling is

---

[5] This term was not defined by the Defendants.

9

the Plaintiff's testimony that the inmates who serve the food only occasionally wear face masks in a proper manner while serving food. And the computers used by the inmates to communicate with family members and attorneys are not cleaned or sanitized after each use.

Plaintiff contends that Rayburn has struggled to sufficiently execute its own policies. Plaintiff's uncontroverted testimony has adequately demonstrated that, under the circumstances, his Eighth Amendment claim will likely prevail on the merits. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

Of particular concern to the Court is the fact that there remain several instances in which Plaintiff is seemingly unable to properly protect himself from infection, despite efforts currently being taken by the facility. For example, Plaintiff testified that while in his bunk, he is capable of touching his bunk neighbor if he reaches to his left. (Doc. 110-1, at p. 55). Also, as a diabetic, he must frequently visit the infirmary for testing and treatment. He alleges that he is required to wait in line at the infirmary in a "shoulder-to-shoulder" manner, thereby increasing the risk of contracting COVID-19. *Id*, at 69.

The most recent policy statements provided by the Defendants, which include the DOC Medical Division's COVID-19 Guidance (the Policy) issued April 6, 2020, lists several requirements that Defendants do not appear to be following, thereby exposing Plaintiff to an unreasonable risk of serious harm. For example, the Policy

10

requires routine and frequent cleaning of high-touch surfaces and shared resident equipment. Such cleaning must be conducted using EPA-registered hospital-grade disinfectants. (Doc. 108–1 at p. 2). On April 13, Plaintiff reported that he had received a spray-bottle to clean high-touch surfaces as contemplated. *See* (Doc. 112). However, a few days later, Plaintiff notified the Court that the bottle was often empty. (Doc. 113, at p. 3). He also informed the Court of several other shortcomings. For example, he alleges that two medical orderlies who work in the infirmary that he regularly visits have not worn the proper personal protective equipment recommended for protection of themselves or others who utilize the services of the infirmary. *Id.* Plaintiff has also allegedly witnessed officers and cafeteria workers wearing PPE incorrectly with their noses exposed from the masks. *Id.*

It would appear, therefore, that despite taking some steps to deter the spread of the virus, Rayburn has not effectively implemented the DOC policies that require staff members and orderlies to wear masks and other PPE to protect the prison population, including the Plaintiff. (Doc. 108–1 at p. 12–14). The prison has also failed to meaningfully implement social-distancing procedures and other measures aimed at thwarting the spread of the coronavirus.  Although the DOC policy defines "social distancing," it does not require that it be implemented at Rayburn or any other DOC facilities. *Id.* at 5. The Court finds it troubling that DOC officials, at least at Rayburn, have apparently disregarded the importance of social distancing in preventing the spread of this unique disease, when numerous public health officials, and the Governor of Louisiana, have consistently urged the residents of the state to observe

such measures to slow the spread of the illness.[6] Defendants' failure to implement their own internal protective policies may itself entitle Plaintiff to relief from the Court. See *Johnson v. Epps*, 479 F. App'x 583, 590 (5th Cir. 2012) (holding that an inmate sufficiently stated a claim for deliberate indifference where prison officials adopted a policy mandating more sanitary procedures, but failed to enforce the policy).

Accordingly, the Court finds that Plaintiff has shown a substantial likelihood of prevailing on the merits of this Motion. He has also demonstrated a sufficiently substantial threat of irreparable injury if relief is not immediately ordered. The threatened injury that he has proven outweighs any harm that may result to the State if the injunction is not granted, and the injunction contemplated herein will not disserve the public. Accordingly, the Court finds that the Plaintiff has met the requirements for injunctive relief. *See, Ridgely* at 734.

### C. Remedies

The Court will deny Plaintiff's request to modify his sentence, to include temporary release with monitoring conditions. Plaintiff's sentence was imposed by a state court, and this Court cannot now conclude that the conditions of confinement, despite the lack of sufficient precautionary measures, entitles him to immediate

---

[6] The Governor has credited social distancing practices with helping to slow the rate of new COVID-19 infections within Louisiana. *See* Gov. Edwards: Social Distancing Working in Coronavirus Fight (April 10, 2020), available at https://www.kalb.com/content/news/Gov-Edwards-provides-updates-on-COVID-19-on-Good-Friday-569540141.html. Also, the CDC has observed that the best way to prevent contracting COVID-19 is to practice social distancing, as well as other preventative measures such as frequent hand-washing, disinfecting surfaces, and covering one's mouth and nose. *See* CDC: How to Protect Yourself and Others (April 13, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

release. Therefore, the Court will not disturb the judgment of the sentencing court. Counsel for the Plaintiff have acknowledged that although officials have implemented several measures aimed at addressing the prevention of the coronavirus at Rayburn, more must be done, and some remedy other than Plaintiff's immediate release may be appropriate.

Based on the evidence presented and the policies provided by Defendants, the Court finds that Defendants are capable of providing Plaintiff with the care necessary to protect him from COVID-19 without requiring relief in the form of temporary compassionate release during the duration of the COVID-19 crisis. Plaintiff's request to modify his sentence is therefore **DENIED**.

### IV. CONCLUSION

Defendants must comply with the Governor's recommendations and their own internal policies concerning disinfection of common areas and the wearing of masks by staff and certain categories of offenders, particularly those who work in the infirmary and cafeteria where the Plaintiff is assigned. Officials must also implement reasonable social-distancing measures to limit the spread of COVID-19 to the Plaintiff.

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Temporary Restraining Order and/or Emergency Motion for Temporary Release (Doc. 93)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants shall submit to the Court a Plan to ensure the implementation of proper hygiene practices in the dormitory in which Plaintiff is assigned, and to implement social distancing practices to limit the spread of COVID-19, as recommended by the Center For Disease Control and other public health authorities, in Plaintiff's immediate living area, for the protection of the Plaintiff. Defendants shall also submit a Plan to minimize Plaintiff's exposure to possible infected persons while visiting the infirmary and cafeteria areas of the prison.

**IT IS FURTHER ORDERED** that Defendants shall submit the Plan herein ordered within 5 days of the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's request for an Order authorizing his immediate supervised released is **DENIED.**

The Parties are advised that the Court may impose additional substantive precautionary measures following its review and evaluation of the Plan.

Baton Rouge, Louisiana, this 23rd day of April, 2020.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**