## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER MARLOWE                          CIVIL ACTION

VERSUS

JAMES LEBLANC, ET AL.                        NO. 18-00063-BAJ-EWD

## RULING AND ORDER

Before the Court is Defendants' **Motion To Dismiss Pursuant To F.R.C.P. Rule 12(b)(1) & 12(c) (Doc. 84)**, seeking dismissal of Plaintiff's Second Amended Complaint (Doc. 64). Plaintiff opposes Defendants' Motion. (Doc. 92). For the reasons stated herein, Defendants' Motion is **GRANTED IN PART**.

## I. ALLEGED FACTS

This case challenges the medical treatment and food options provided by the Louisiana Department of Corrections ("DOC") to prisoners diagnosed with diabetes. For present purposes the following allegations are accepted as true:

Plaintiff has been an inmate in DOC custody since September 2009. (Doc. 64 ¶ 11). Until January 2019, Plaintiff was imprisoned at the Elayn Hunt Correctional Center ("Hunt"). (*Id.* at ¶ 13). In January 2019, Plaintiff was transferred to the Rayburn Correctional Center ("Rayburn"), where he currently resides. (*Id.*).

When Plaintiff entered DOC custody he was in good health and not experiencing any symptoms of diabetes. (*Id.* at ¶ 12). Beginning in August 2016, while incarcerated at Hunt, Plaintiff began experiencing multiple symptoms indicative of

1

diabetes, including tingling, pain and numbness in his feet, cracking skin on his feet, blurred vision, shakiness, frequent urination, significant weight loss, and extreme thirst and fatigue. (*Id.* at ¶¶ 1, 22). Plaintiff reported these symptoms to prison staff on four occasions between September and November 2016. (*Id.* at ¶ 2). On each occasion, prison staff misdiagnosed Plaintiff with various other ailments including dehydration and "wearing the wrong shoes." (*Id.* at ¶¶ 26-30). As a result, Plaintiff missed the opportunity to be screened for pre-diabetes, and his condition continued to worsen. (*Id.* at ¶¶ 26-30).

Finally, on November 10, 2016, Hunt medical staff tested Plaintiff's blood-glucose, revealing that Plaintiff's "glucose had risen to a life-threatening level of nearly 900 mg/dl." (*Id.* at ¶ 32). The next day, November 11, medical staff instructed Defendant Fallon Stewart—an EMT at Hunt—to transport Plaintiff "to the acute treatment unit to undergo immediate treatment." (*Id.* at ¶ 33). Defendant Stewart "ignored these commands" for four days, leaving Plaintiff "untreated and unaware of his potentially fatal condition." (*Id.* at ¶¶ 33-34).

Ultimately, Plaintiff's worsening health resulted in him being rushed to University Hospital in New Orleans "to receive emergency treatment and to prevent him from slipping into a diabetic coma." (*Id.* at ¶ 34; *see also id.* at ¶ 2). At University Hospital "doctors diagnosed [Plaintiff] with diabetes and told him he should have been dead in light of his extremely high glucose and A1C levels." (*Id.* at ¶ 34). Plaintiff alleges that Hunt staff—specifically, Defendant Stewart—knew of his "potentially fatal glucose levels for at least four days before transporting him to University

Hospital." (*Id.* at ¶¶ 2, 34).

Plaintiff's problems did not end after his diagnosis. Upon returning to Hunt, and continuing through the present, prison staff failed to provide Plaintiff adequate medical treatment to manage his diabetes. Defendants control access to Plaintiff's prescriptions, including Plaintiff's insulin. (*Id.* at ¶¶ 60-61). On various occasions, Plaintiff has been provided the wrong medication, forced to take expired insulin, or was denied insulin altogether. (*Id.* at ¶¶ 60-66). Defendants also control access to Plaintiff's blood-glucose monitoring equipment, and do not monitor Plaintiff's blood glucose at night or between meals. (*Id.* at ¶ 68). Further, Defendants have failed to provide Plaintiff preventive screening and treatment for common chronic diabetic conditions, including damage to eyes, feet, and kidneys. (*Id.* at ¶ 72).

Compounding matters, Defendants have failed to provide meals appropriate for managing Plaintiff's diabetes. Specifically, Plaintiff alleges that prison policies force Plaintiff to eat meals that "are deficient in nutrients with an unhealthy and disproportionate amount of refined sugar and high glycemic index carbohydrates." (*Id.* at ¶¶ 15-21). If forced to eat such meals, Plaintiff faces a substantially increased "risk of serious, long-term complications including blindness, amputations of the lower extremities, kidney failure that may require dialysis or transplantation, nerve damage which causes numbness, pain and other nervous system problems, pneumonia, strokes, heart attacks, and death." (*Id.* at ¶¶ 50-55).

Plaintiff alleges that he has suffered diminished health (including the onset of diabetes), and unnecessary pain and suffering as a result of Defendants' various acts

and omissions. (*Id.* at ¶¶ 80, 85, 90). On this basis, Plaintiff seeks a declaration that Defendants' actions are unlawful; an injunction requiring Defendants to provide food appropriate for the medical needs of diabetic inmates; an injunction requiring "appropriate medical care, including timely distribution of his medication, access to equipment to monitor his glucose levels, and timely dental, eye, and podiatrist appointments"; an award of monetary damages (including punitive damages); and attorneys' fees and costs. (*Id.* at p. 33).

## II. PROCEDURAL HISTORY

Plaintiff filed his Seconded Amended Complaint ("SAC") on June 20, 2019. (Doc. 64). The SAC asserts eight claims against 19 Defendants. Plaintiff's claims can be divided into four groups:

- Official capacity constitutional claims, alleging that certain Defendants enforce policies and practices that deny Plaintiff access to proper diabetes treatment and medically-appropriate food options, violating the Eighth Amendment's prohibition on cruel and unusual punishment (Counts 1 and 2);

- Personal capacity constitutional claims, alleging that certain Defendants demonstrated deliberate indifference to Plaintiff's documented medical needs, and, further, that this indifference was the result of certain other Defendants' failure to properly train and supervise, violating the Eighth Amendment's prohibition on cruel and unusual punishment (Counts 3 and 4);

- Discrimination claims, alleging that the DOC has failed to accommodate Plaintiff's diabetes and otherwise discriminated against Plaintiff on the basis of his diabetes, in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act (Count 5);

- State law claims, alleging that the same facts establishing Plaintiff's personal capacity Eighth Amendment claims also establish claims of medical malpractice, negligence, and negligent supervision under Louisiana law (Counts 6-8).

(Doc. 64 at ¶¶ 78-93).

Defendants, proceeding collectively, filed their Motion To Dismiss on October 10, 2019. (Doc. 84). Defendants' Motion seeks dismissal of Plaintiff's action in its entirety, contending (i) some of Plaintiff's claims are barred by Eleventh Amendment sovereign immunity; (ii) other claims are moot; (iii) Defendants are shielded by qualified immunity; and (iv) Plaintiff's allegations are otherwise insufficient to state actionable claims. (*See* Doc. 84 at 3-4). Plaintiff opposes Defendants' Motion. (Doc. 92).

## III.  ANALYSIS

### A.  Eleventh Amendment Immunity

#### i.  Standard

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286–287 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.*

Relevant here, the Eleventh Amendment "bars actions seeking retroactive monetary relief from states and state officials acting in their official capacity." *Reed v. Bullock*, 872 F.2d 671, 671 (5th Cir. 1989) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).

Additionally, under *Pennhurst State School and Hospital v. Halderman*, 465

U.S. 89 (1984) and its progeny, the Eleventh Amendment bars suits in federal court

by a citizen of a state against his own state or against a state agency or department.

*See Hughes v. Savell*, 902 F.2d 376, 377 (5th Cir. 1990).

> The amendment also prohibits suits against state officials when the state is the real, substantial party in interest. The state is the real party in interest if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the state to act or to refrain from acting. According to this reasoning, a claim that state officials violated *state* law in carrying out their official responsibilities is a claim against the State. … When interpreting *Pennhurst,* the Fifth Circuit has construed the term "state law" to include both statutory enactments and state common law.

*Id.* at 377–78 (5th Cir. 1990) (citations omitted).

## ii. Discussion

Plaintiff concedes that his constitutional claims for monetary damages against

Defendants acting in their official capacities are barred by the Eleventh Amendment.

(Doc. 94 at 9). Accordingly, these claims will be dismissed.

Additionally, Defendants contend that Plaintiff's state law claims of medical

malpractice, negligence, and negligent supervision must be dismissed under

*Pennhurst.* (Doc. 84-1 at 7). Defendants cite specifically to *Hughes v. Savell*, where

the U.S. Court of Appeals for the Fifth Circuit vacated a judgment awarding a

prisoner plaintiff $1,750 based on a state law negligence claim against a prison guard,

and remanded with instructions to dismiss for lack of jurisdiction under the Eleventh

Amendment. *Hughes*, 902 F.2d at 377. In *Hughes*, the Circuit stated unequivocally:

"[W]here litigants accuse state officers of violating state common law when acting in

the course and scope of their employment, the Eleventh Amendment prevents the

6

litigant from raising the claim in federal court whether the litigant seeks damages or injunctive relief, and whether the litigant invokes the court's original or pendent jurisdiction." *Id.* at 378 (citations omitted).

Plaintiff fails to address Defendants' arguments regarding his state law claims, and the Court sees no basis to depart from the Circuit's reasoning in *Hughes*. Accordingly, Plaintiff's state law claims will also be dismissed for lack of jurisdiction under the Eleventh Amendment. *Hughes*, 902 F.2d at 379.

### B. Mootness

#### i. Standard

Generally, requests for injunctive relief seeking changes to conditions of confinement become moot when a prisoner is transferred to another facility. *Stern v. Hinds Cty., Miss.*, 436 F. App'x 381, 382 (5th Cir. 2011). An exception to the mootness doctrine exists, however, when the alleged violation is "capable of repetition, yet evading review." *Hancock Cty. Bd. of Supervisors v. Ruhr*, 568 F. App'x 295, 299–300 (5th Cir. 2014). In the prison context, this exception is established when there is a likelihood that the plaintiff will be returned to the complained of facility. *See Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975) (concluding that an inmate's transfer did not moot the case when "defendants were unable to advise that [the inmate] would not be returned to the [complained of prison]."); *see also Lemcool v. Fla. Dep't of Corr.*, 543 F. App'x 909, 913 (11th Cir. 2013) ("The district court also erred in concluding that Lemcool's transfer out of LCI mooted her claims against LCI staff members. Because Lemcool was subject to return—and has, in fact, been transferred back to LCI—her claims against LCI staff members are not moot.").

7

### ii. Discussion

Plaintiff's claims are not moot. As an initial matter, mootness clearly does not apply, to the extent Plaintiff seeks improved conditions at Rayburn, where he is presently located.

Additionally, the Court finds that Plaintiff's claims for improved conditions at Hunt fall under the exception to the mootness doctrine. Plaintiff asserts that there is a strong likelihood he will be returned to Hunt because he has already been transferred to Hunt twice during his incarceration, and Hunt is specifically designated to handle inmates with medical issues such as diabetes. (Doc. 92 at 10). Accepting these representations as true, it is reasonable to expect that Plaintiff will be returned to Hunt at some point, and his claims should be considered on their merits. *See Hardwick*, 523 F.2d at 800; *Lemcool*, 543 F. App'x at 913.

### C. Merits

### i. Appropriate Standard

Defendants purport to seek a judgment on the pleadings pursuant to Rule 12(c). A prerequisite to judgment on the pleadings, however, is that the "pleadings are closed"—*i.e.*, an answer is filed. Fed. R. Civ. P. 12(c); *see* Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1367 (3d ed.) ("the pleadings are closed upon the filing of a complaint and an answer"). Here, only one Defendant—Dr. John Morrison—has filed an Answer in response to the operative SAC. (*See* Doc. 65). As such, Defendants' request for judgment on the pleadings under Rule 12(c) is premature for all Defendants except Dr. Morrison, and the Court will treat Defendants' Motion as a motion to dismiss under Rule 12(b)(6).

### ii. Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

### iii. Discussion

#### a. Plaintiff's Constitutional Claims

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney,* 509 U.S. 25, 31 (1993). Writ large, prison officials must provide humane conditions of confinement. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) ("The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). Relevant here, prison officials must ensure that inmates receive adequate medical care and food, and

must take reasonable measures to ensure inmates' safety. *Id.* "The Supreme Court has made clear that the standards against which a court measures prison conditions are 'the evolving standards of decency that mark the progress of a maturing society' and not the standards in effect during the time of the drafting of the Eighth Amendment." *Id.* at 332-33 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, (1976)).

"A prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate." *Id.* at 333 (citing *Farmer,* 511 U.S. at 833-34). Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.*

> Conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The Supreme Court has noted that "the length of confinement cannot be ignored.... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). It is also important to note that the inmate need not show that death or serious illness has occurred. *Helling v. McKinney*, 509 U.S. 25, 32 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.").

*Gates*, 376 F.3d at 333.

### 1.  Counts 1 & 2: Plaintiff's Official Capacity Claims

Counts 1 and 2 allege official capacity claims against Defendants DOC

Secretary James LeBlanc, current DOC Medical Director Dr. John Morrison, Hunt Warden Timothy Hooper, Hunt Deputy Warden Stephanie Michel, Hunt Assistant Warden Morgan LeBlanc, Hunt Assistant Warden Darryl Campbell, Hunt Medical Director Dr. Preety Singh, and Hunt Food Manager Gail Levy. (Doc. 64 at ¶¶ 78-87).[1] Plaintiff maintains that these Defendants maintain and enforce policies and practices that deny Plaintiff access to proper medical treatment for his diabetes, and further deny Plaintiff medically-appropriate food options. (*See id.*). Defendants contend that Plaintiff's allegations fail to set forth viable official capacity claims against these Defendants. (Doc. 84-1 at 11).

The SAC alleges that Defendants' policies and practices violate Plaintiff's constitutional right to humane conditions of confinement in at least the following ways.

- Defendants fail to provide a diabetes-appropriate diet, instead providing meals "high in starch, saturated fat, simple carbohydrates, and high glycemic index carbohydrates," resulting food options that "will worsen [Plaintiff's] diabetes condition." (Doc. 64 ¶¶ 53-55);
- Defendants fail to properly manage and distribute insulin and other medications at "pill call," resulting in the administration of expired insulin, incorrect medication, and sometimes even the denial of insulin. (Doc. 64 ¶¶ 56-69).

Accepting these allegations as true, Plaintiff has established viable official capacity claims. The risks of uncontrolled diabetes are manifest and well-

---

[1] Count 1 also alleges official capacity claims against former DOC Medical Director Dr. Raman Singh and former DOC Interim Medical Director Dr. Pam Hearn. It is uncontested that these Defendants no longer occupy the position of DOC Medical Director, having been replaced by current DOC Medical Director Dr. John Morrison. As such, Count 1 will be dismissed as to Dr. Raman Singh and Dr. Pam Hearn, and Dr. Morrison will be substituted in their place. *See* Fed. R. Civ. P. 25(d).

documented. Without access to proper medical treatment, monitoring, and food options, a diabetic inmate will suffer complications that may include heart attack, stroke, loss of eyesight, kidney failure, diabetic coma, disorientation, seizures, brain damage, and even death. *See Baughman v. Seale*, 761 F. App'x 371, 373 (5th Cir. 2019), *cert. denied* 140 S. Ct. 1142 (2020). Insulin, in particular, is critical to diabetic care. *See id.* ("A diabetic's blood-glucose levels must be regulated by treatment, specifically, with injections of insulin or oral drugs such as metformin, glyburide, and glipizide."). Plaintiff alleges that Defendants' policies and practices result in the administration of expired and degraded insulin and, at times, even intentional denial of insulin. "[I]ntentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" establishes "deliberate indifference to a prisoner's serious illness or injury states a cause of action under Section 1983." *Estelle*, 429 U.S. at 104–05.

Plaintiff further alleges that Defendants' policies and practices result in food options that unavoidably worsen Plaintiff's condition. Plaintiff has provided a portion of the menu from the facility, and alleges that the meals provided to him and others contain a disproportionate amount of refined sugar and high glycemic index carbohydrates, and are cooked in shortening or lard. Additionally, Plaintiff alleges that the only location within the facility where he may obtain healthier options charges him more than he can afford to pay based on his hourly wage of $0.04. (Doc. 64 at ¶¶ 19, 35).  In effect, Plaintiff alleges that he is put in the position of having to choose between food that will worsen his diabetic condition (possibly

resulting in death), or no food at all, thus denying Plaintiff the "minimal civilized measure of life's necessities." *See Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" (quoting *Wilson*, 501 U.S. at 298)).

In sum, the Court finds that Defendants' alleged policies resulting in the delay and denial of insulin and other medications, and inappropriate food options— standing alone *and* in combination—establish viable official capacity claims at this stage. *See Gates*, 376 F.3d at 333.

### 2. Counts 3 & 4: Plaintiff's Personal Capacity Claims

Count 3 alleges that Defendants Hunt Medical Director Dr. Preety Singh, former Hunt Nurse Practitioner Polly Smith, former Hunt EMT Fallon Stewart, Hunt EMT Elizabeth Gauthreaux, Hunt Pharmacist Jonathan Travis, Hunt Master Sergeant Angel Horn, Hunt Master Sergeant Rolanda Palmer, Hunt Sergeant Chermaine Brown, and Sergeant Chameka Johnson (collectively, the "Direct Defendants"), each in their personal capacities, took actions against Plaintiff that demonstrated deliberate indifference to Plaintiff's documented medical needs, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Count 4 seeks to extend liability for the Direct Defendants' actions to former DOC Medical Director Dr. Raman Singh, current DOC Medical Director Dr. John Morrison, Hunt Warden Timothy Hooper, Hunt Deputy Warden Stephanie Michel, Hunt Assistant Warden Morgan LeBlanc, and Hunt Medical Director Dr. Preety Singh (collectively, the "Supervisor Defendants"), under the theory that the

13

Supervisor Defendants failed to properly train and supervise the Direct Defendants, and that this failure resulted in the alleged constitutional violations.

Defendants contend that Counts 3 and 4 must be dismissed because each of the Direct Defendants and the Supervisor Defendants are entitled to qualified immunity. (Doc. 84-1 at 14-20).

### a)    Qualified Immunity Standard

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, (2012). There are generally two steps in a qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second[,] the court must decide whether the right at issue was clearly established at time of the defendant's alleged misconduct.

*Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (citations and alterations omitted). The Court is not required to address these steps in sequential order. *Pearson*, 555 U.S. at 242 ("Because the two-step ... procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeal are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

### b)    Direct Defendants

In his opposition, Plaintiff clarifies that his personal capacity claims against the Direct Defendants fall into three groups:

- Defendants Gauthreaux, Smith, and Stewart, prison staff that failed to recognize and treat Plaintiff's diabetic condition prior to diagnosis (Doc. 64 at ¶¶ 23-39);

- Defendants Horn, Palmer, Brown, and Johnson, prison staff that refused to provide Plaintiff insulin after his diagnosis, (*Id.* at ¶¶ 64-66), and Defendant Travis, Hunt's pharmacist who failed to refill Plaintiff's prescriptions, causing Plaintiff to go without insulin and take expired medication, (*Id.* at ¶¶ 61-63); and

- Dr. Preety Singh, Hunt's medical director, who overrode recommendations of Plaintiff's diagnosing physicians at University Hospital in favor of other treatments, (*Id.* at ¶¶ 73-74).

(*See* Doc. 92 at 17-21). The Court analyzes the allegations against each Defendant in turn.

### 1) Defendants Gauthreaux, Smith, and Stewart

Plaintiff alleges that on four occasions between August and November 2016—*prior* to his diagnosis with diabetes—he presented to Defendants Gauthreaux, Smith, and Stewart at the "sick call station" and complained of symptoms consistent with diabetes. (Doc. 64 at ¶¶ 22-25). On each occasion, these Defendants failed to properly diagnose Plaintiff's diabetes, and instead incorrectly attributed his symptoms to "anxiety, having the wrong shoes, athlete's foot, and/or dehydration," and offered Plaintiff over-the-counter medications such as "foot cream, Neosporin, and Ibuprofen." (*Id.* at ¶¶ 26-27). Further, these Defendants "encouraged [Plaintiff] not to fill out a sick call form to see a doctor." (*Id.* at ¶ 27). As a result, Plaintiff "1) missed the opportunity to be screened for prediabetes and 2) endured significant pain and suffering as his symptoms continued to worsen." (*Id.* at ¶ 29).

Additionally, Plaintiff alleges that *after* blood tests revealed that Plaintiff's "glucose had risen to a life-threatening level of nearly 900 mg/dl," Defendant Stewart

15

disregarded direct orders to transport Plaintiff "to the acute treatment unit to undergo immediate treatment." (*Id.* at ¶¶ 32-33). Defendant Stewart "ignored these commands" for four days, leaving Plaintiff "untreated and unaware of his potentially fatal condition." (*Id.* at ¶¶ 33-34). Plaintiff alleges that during this time, Defendant Stewart knew of his "potentially fatal glucose levels." (*Id.* at ¶¶ 2, 34).

Plaintiff's personal capacity claims against Defendants Gauthreaux and Smith will be dismissed. Although these Defendants failed to initially diagnose Plaintiff's diabetes, they nonetheless responded to Plaintiff's symptoms and provided minimal treatment, defeating Plaintiff's assertion of deliberate indifference. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.").

Defendant Stewart stands in a different category. Plaintiff's allegations, accepted as true, establish that Stewart knew that Plaintiff's condition was life-threatening and that time was of the essence, yet disregarded direct orders to transport Plaintiff to the acute treatment unit, leaving Plaintiff untreated and at risk of serious injury or death for four days. "[I]ntentionally denying or delaying access to medical care" establishes "deliberate indifference to a prisoner's serious illness or injury states a cause of action under Section 1983." *See Estelle*, 429 U.S. at 104-05. Plaintiff's personal capacity claim against Defendant Stewart may proceed.

16

### 2) Defendants Horn, Palmer, Brown, Johnson, and Travis

Plaintiff alleges that Defendants Horn, Palmer, Brown, and Johnson control access to Plaintiff's prescriptions, including Plaintiff's insulin, and on multiple occasions have intentionally provided Plaintiff expired insulin, "willfully ignored" Plaintiff's complaints regarding the expired insulin, and even denied Plaintiff insulin altogether. (Doc. 64 at ¶¶ 60-66). Again, "intentionally interfering with the treatment once prescribed" establishes "deliberate indifference to a prisoner's serious illness or injury states a cause of action under Section 1983." *See Estelle*, 429 U.S. at 104-05. Accepted as true, these allegations establish viable claims against Defendants Horn, Palmer, Brown, and Johnson.

Plaintiff alleges that Defendant Travis is responsible for ensuring Plaintiff's access to unexpired insulin, yet failed to fill Plaintiff's prescriptions on at least six occasions, "causing him to both go without his required prescription and take expired medication." (*Id.* at ¶¶ 61-63). Missing from Plaintiff's Complaint is any allegation that Travis's omission was intentional. Mere negligence does not establish deliberate indifference. *Gobert*, 463 F.3d at 346. Plaintiff's claim against Travis will be dismissed.

### 3) Defendant Dr. Preety Singh

Plaintiff alleges that Defendant Dr. Preety Singh violated his constitutional rights by failing to treat Plaintiff with Glucerna, a supplement that minimizes blood-sugar spikes between insulin doses, as recommended by physicians at University Hospital. (Doc. 64 at ¶¶ 73-74; *see also* Doc. 92 at 21). Plaintiff does not allege that

17

his condition requires Glucerna, but instead contends that Dr. Preety Singh's course of treatment "contradicts best practices in chronic care management of diabetes." (Doc. 64 at ¶ 74).

Essentially, Plaintiff contends that Dr. Preety Singh has violated his constitutional rights by failing to provide optimum (or additional) treatment for his condition. Fifth Circuit law is clear, however, that a prisoner is not entitled to optimum medical treatment, provided that the treatment actually provided addresses his medical needs. *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (the fact that a prisoner's medical treatment "may not have been the best money could buy" is insufficient to establish a constitutional violation); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available).

Moreover, "the decision whether to provide additional treatment is a classic example of a matter for medical judgment," and a prisoner's mere disagreement with his course of medical treatment cannot establish deliberate indifference, absent exceptional circumstances. *Gobert*, 463 F.3d at 346 (quotation marks omitted); *see also id.* ("A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."). Plaintiff fails to allege any such exceptional circumstances as to Dr. Preety Singh. As such, Plaintiff's allegations are insufficient to establish deliberate indifference and Count 3 will be

dismissed as to Dr. Preety Singh.

### c)   Supervisor Defendants

Count 4 seeks to extend liability for the Direct Defendants' actions to those who allegedly supervised the Direct Defendants, under the theory that these Supervisor Defendants failed to properly train and supervise the Direct Defendants.

In a § 1983 claim for failure to supervise or train, the plaintiff must show:

> (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

*Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). In this context, deliberate indifference generally requires the plaintiff to "demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id*.

Plaintiff alleges three areas where the Supervisor Defendants failed to adequately train and supervise the Direct Defendants: handling inmate referrals for medical care at "sick call"; stocking and filling inmate prescriptions; and distributing medications to inmates. (Doc. 64 at ¶ 93). Plaintiff further alleges that he suffered unnecessary pain and diminished health as a result of the Supervisor Defendants' failure to train in each of these areas. (*Id.* at ¶¶ 29, 60-67). On this basis, the Court is satisfied that Plaintiff has properly alleged the first two elements of his failure to train and supervise claim. *See Goodman*, 571 F.3d at 395.

The Court also determines that Plaintiff has adequately alleged the third element—that the Supervisor Defendants' failure to train or supervise amounts to

deliberate indifference. *See id*. Plaintiff alleges that the Supervisor Defendants knew that their current supervision and training are inadequate due to the existence of "inmate grievances" (including Plaintiff's), and "current ARPs and litigation" alleging similar claims. (*See id*. at ¶¶ 45, 47, 94). Prior complaints regarding unconstitutional conditions of the same type are probative of prison officials' deliberate indifference. *E.g.*, Gates, 376 F.3d at 340 (plaintiff established prison officials' deliberate indifference based, in part, on "evidence that inmates had complained of symptoms of heat-related illness"). Here, Plaintiff directs the Court's attention to *Lewis, et al., v. Cain, et al.*, No. 3:15-cv-00318-SDD-RLB (M.D. La.), a class action alleging deficient medical care at the Louisiana State Penitentiary at Angola. Notably, two of the named defendants in the *Lewis* action are also named defendants here—DOC Secretary LeBlanc, and former DOC Medical Director Dr. Raman Singh—and the alleged constitutional violations alleged in the *Lewis* litigation are strikingly similar to those alleged here—specifically, that prison officials commonly misdiagnose or ignore serious medical concerns at "sick call"; fail to consistently stock and distribute necessary prescriptions; and even withhold insulin from inmates with diabetes.

Additionally, the Court takes judicial notice of multiple other actions in this District specifically alleging that DOC prison officials misdiagnose or ignore inmates' complaints of serious health complications from diabetes, fail to stock and supply medically-appropriate prescriptions (including insulin), and delay and refuse insulin to diabetic inmates. *E.g.*, *Van Nortrick v. Levespere, et al.*, No. 18-cv-00534-JWD-EWD (M.D. La.); *Banks v. LeBlanc, et al.*, No. 16-cv-00649-JWD-EWD (M.D. La.).

These actions illustrate that the results of prison officials' failure to properly attend to the needs of diabetic inmates are easily foreseeable and frequently catastrophic, and include life-threatening diabetic episodes similar to those alleged here. *E.g. Van Nortrick v. Lavespere*, No. 18-cv-00534-JWD-EWD, 2019 WL 852121, at *4 (M.D. La. Feb. 22, 2019) ("One particularly troubling incident involving low blood sugar occurred on December 19, 2017, when, following a fall, which fractured his right tibial shaft and lateral malleolus, Plaintiff was admitted to the University Medical Center in New Orleans.").

In sum, for present purposes the Court is satisfied that Plaintiff has "demonstrate[d] a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman*, 571 F.3d at 395. Plaintiff's failure to train and supervise claims against the Supervisor Defendants may proceed.

### b. Plaintiff's ADA Claim

Count 5 alleges that the DOC has (1) failed to accommodate Plaintiff's diabetes and (2) otherwise discriminated against Plaintiff on the basis of his diabetes, in violation of Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act. (Doc. 64 at pp. 30-31).

"The Rehabilitation Act and Title II of the ADA prohibit state and local governments, including prisons, from discriminating on the basis of disability." *Hacker v. Cain*, 759 F. App'x 212, 215 (5th Cir. 2018). "A plaintiff must first establish a *prima facie* case of discrimination before relief under the ADA can be considered." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004).

21

### 1. Failure to Accommodate

To maintain a failure to accommodate claim under Title II, a plaintiff must first allege "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the public entity; and (3) the entity failed to make reasonable accommodations." *Windham v. Harris Cty., Texas*, 875 F.3d 229, 237 n.8 (5th Cir. 2017) (alteration omitted; quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

Here, Plaintiff has adequately alleged his failure to accommodate claim: (1) he is diagnosed with diabetes, a qualifying disability affecting the endocrine system, *see Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.15 (5th Cir. 2020); (2) Defendants knew of his disability and its consequences; and yet (3) Defendants failed to provide medically appropriate meals and, on multiple occasions, refused to provide Plaintiff his insulin, or administered expired insulin.

### 2. Direct Discrimination

To state a claim for direct discrimination under the ADA, a plaintiff must allege "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Arce v. Louisiana*, 226 F. Supp. 3d 643, 650 (E.D. La. 2016) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011)). Notably, "[d]iscrimination under the ADA and Rehabilitation Act may include a defendant's failure to make reasonable accommodations to the needs of a disabled person." *Wright v. Texas Dep't of Criminal Justice*, No. 13-cv-0116, 2013 WL 6578994, at *3 (N.D. Tex.

Dec. 16, 2013) (citing *Melton*, 391 F.3d at 673); *see also Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination); *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation or denial of the benefits of the prison's services, programs or activities." (internal quotation marks, brackets, ellipses, and citation omitted)); *Lee v. Valdez*, 2009 WL 1406244, at *12 (N.D. Tex. May 20, 2009) (recognizing cause of action under Title II and Rehabilitation Act where paranoid schizophrenic plaintiff inmate alleged "she was denied reasonable accommodations for her serious mental disabilities to allow her to access health care in the Dallas Jail."); *McCoy v. Tex. Dep't Crim. Justice*, 2006 WL 2331055, at *7 and n. 6 (S.D. Tex. Aug. 9, 2006) ("In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." (internal citations omitted)).

Here, again, Plaintiff's allegations establish his *prima facie* case of direct discrimination: (1) he has a qualifying disability (diabetes); (2) he is being denied access to medically appropriate food services and medical care; and (3) the discrimination—specifically, Defendants' failure to accommodate his dietary and

medical needs—is the direct result of his diabetes. *See Wright*, 2013 WL 6578994, at *3-*4 (plaintiff diagnosed with schizophrenia and suicidal tendencies adequately alleged direct discrimination based on defendant's failure to accommodate his need for a single bunk without dangerous "tie offs" (citing authorities)).

Plaintiff's failure to accommodate and discrimination claims may proceed.

### D. Amendment

Plaintiff requests the opportunity to amend his complaint to the extent any of his claims are dismissed. (Doc. 92 at 7). When, as here, the deadline to amend has passed, amendment may be granted "only for good cause and with the judge's consent." Fed. R. Civ. P. 16; *see Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prod., Inc.*, 410 F. App'x 738, 740 (5th Cir. 2010) ("Post-deadline motions to amend are covered by Rule 16(b)'s more stringent requirements and may be granted only for good cause and with the judge's consent." (quotations and alterations omitted)).

Plaintiff has already amended his complaint twice, and fails to make any showing that amending a third time would sufficiently address the deficiencies identified herein. As such, Plaintiff has failed to show good cause and Plaintiff's request to amend shall be denied.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Dismiss (Doc. 84)** is **GRANTED IN PART**.

Specifically,

Defendants' request to dismiss Count 1 is **GRANTED** as to Defendants Dr. Pam Hearn and Dr. Raman Singh only.

Defendants' request to dismiss Count 2 is **DENIED**.

Defendants' request to dismiss Count 3 is **GRANTED** as to Defendants Dr. Preety Singh, Nurse Practitioner Polly Smith, EMT Elizabeth Gauthreaux, and Pharmacist Jonathan Travis only.

Defendants' request to dismiss Count 4 is **DENIED**.

Defendants' request to dismiss Count 5 is **DENIED**.

Defendants' requests to dismiss Counts 6, 7, and 8 are **GRANTED**. Counts 6, 7, and 8 are **DISMISSED** for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that Defendants' Answer to Plaintiff's Second Amended Complaint is due within 14 days of the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS FURTHER ORDERED** that  a telephone status conference to select a new trial date and related deadlines is set for November 16, 2020 at 1:30 p.m. Dial-in information shall be circulated to counsel by e-mail on the day of the conference.


Baton Rouge, Louisiana, this 26th day of October, 2020


**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**