# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHRISTOPHER MARLOWE**                                **CIVIL ACTION**

**VERSUS**

**JAMES LEBLANC, ET AL.**                          **NO. 18-00063-BAJ-EWD**

## RULING AND ORDER

On July 5, 2022, the U.S. Court of Appeals for the Fifth Circuit returned this action to this Court for a second look at whether Plaintiff's personal-capacity Eighth Amendment claims survive certain Defendants' invocation of qualified immunity. In doing so, the Circuit also instructed the Court to "carefully disaggregate all personal-capacity claims from official-capacity claims." (Doc. 148 at p. 8).

Heeding the Fifth Circuit's call, and with the benefit of the Circuit's guidance, the Court now dismisses all Defendants named in Plaintiff's official-capacity claims (Counts 1 and 2) *except* Louisiana Department of Public Safety and Corrections (DPSC) Secretary James LeBlanc. Additionally, the Court now dismisses certain Defendants named in Plaintiff's personal-capacity deliberate indifference claims (Count 3), and *all* Defendants named in Plaintiff's personal-capacity failure to train and supervise claims (Count 4). As a result if this Order, and the Court's prior Order of October 26, 2020 (Doc. 136), Plaintiff's official-capacity claims (Counts 1 and 2) will proceed against DPSC Secretary LeBlanc, only; Plaintiff's personal-capacity deliberate indifference claims (Count 3) will proceed against Elayn Hunt Correctional Center (EHCC) EMT Fallon Stewart, EHCC Master Sergeant Angel Horn, EHCC

1

Master Sergeant Rolanda Palmer, and EHCC Sergeant Chermaine Brown, only; and Plaintiff's statutory claims under the Americans with Disabilities Act, Americans with Disabilities Amendment Act, and Rehabilitation Act (collectively, "ADA") (Count 5) will proceed against DPSC only. All other Counts and Defendants will be dismissed.

## I. RELEVANT BACKGROUND

The Court has already set forth the relevant allegations and procedural background, at Sections I and II of its October 26 Order granting in part Defendants' collective Motion To Dismiss. (Doc. 136 at pp. 2-5). The Court incorporates those sections by reference, as if fully set forth herein.

To quickly recap, Plaintiff is an inmate in DPSC custody. Until January 2019, Plaintiff was incarcerated at EHCC. Now he resides at Rayburn Correctional Center. Plaintiff suffers from diabetes, and contends that the medical treatment and food options provided to him fall below even the most basic standards required for his medical condition, violating constitutional, statutory, and state law duties of care. Plaintiff's Second Amended Complaint (SAC) names 18 Defendants, ranging from DPSC at the top, to the Correctional Officers that administered Plaintiff's daily insulin and other medications at EHCC "pill call."

Most recently, this Court granted *in part* Defendants' Motion To Dismiss (Doc. 84), dismissing Plaintiff's state law claims; permitting Plaintiff's ADA claim to proceed; and taking a middling path as to Plaintiff's Eighth Amendment claims, dismissing some Defendants but allowing Plaintiff's claims to proceed against others. (Doc. 136). The Court's muddled analysis of Plaintiff's constitutional claims tracked

closely the parties' presentation in their respective Rule 12 papers, but nonetheless drew the Fifth Circuit's reproach after the Defendants *not* dismissed sought immediate review of this Court's denial of qualified immunity.

Consistent with the Circuit's instructions on remand, the Court now expands its analysis of Plaintiff's constitutional claims and Defendants' qualified immunity defenses. First, as directed, the Court "disaggregate[s] all personal-capacity claims from official-capacity claims." (Doc. 148 at p. 8). Second, for all personal-capacity claims *not* previously dismissed,[1] the Courts conducts the following qualified immunity analysis as to each Defendant:

> The first question is (a) whether [the Defendant] violated a clearly established right. In considering that question, the court must (b) frame the constitutional question with specificity and granularity. With the question thus framed, the court should (c) inquire whether existing precedent places the statutory or constitutional question—here, whether [the Defendant] violated Marlowe's rights—beyond debate. And finally, the court should (d) be sure to apply the modified motion-to-dismiss standard that governs in the context of qualified immunity.

(*Id.* at pp. 7-8 (quotation marks and citations omitted)).

## II. ANALYSIS

### A. Standard

At the Rule 12 stage, "[t]he critical issue is whether the complaint contains 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, --- F.Supp.3d ----,

---

[1] The Court's prior Order dismissed Plaintiff's personal-capacity deliberate indifference claims (Count 3) against EHCC Medical Director Dr. Preety Singh, EHCC Nurse Practitioner Polly Smith, EHCC EMT Elizabeth Gauthreaux, and EHCC Pharmacist Jonathan Travis. (Doc. 136 at pp. 15-16, 17-19, 25). The Fifth Circuit does not take issue with these dismissals, and the Court does not revisit them here.

2023 WL 143171, at *8 (M.D. La. Jan. 10, 2023) (Jackson, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). When conducting its inquiry, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

**B. Discussion**

The Eighth Amendment forbids cruel and unusual punishments. This prohibition includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Defendants here do not contest that diabetes is a serious condition that requires medical attention.

As such, the Court's analysis of Plaintiff's Eighth Amendment claims is driven entirely by whether Defendants' alleged response(s) to Plaintiff's diabetes amounted to "deliberate indifference." The Fifth Circuit cautions that "deliberate indifference" is "a demanding standard." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019).

> Negligence or inadvertence is not enough. A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment. An inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.

Rather, the inmate must show that officials acted with malicious intent—that is, with knowledge that they were withholding medically necessary care. The plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Id.* at 219–20.

Still, despite being a high bar, deliberate indifference is *not* an impossible bar. To the point, an inmate need not die or even suffer "serious illness" to establish deliberate indifference. *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) ("It is also important to note that the inmate need not show that death or serious illness has occurred." (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

### i. Official-Capacity Claims For Injunctive And Declaratory Relief (Counts 1 And 2)

As noted, on remand the Fifth Circuit instructs the Court to "disaggregate" Plaintiff's official-capacity claims from his personal-capacity claims. (Doc. 148 at p. 8). Point taken. This Court's prior Order allowed Plaintiff to pursue his official-capacity claims against multiple Defendants. This muddied the waters by creating unnecessary redundancy. Official-capacity suits are "really suits against the governmental entity"—here, DPSC, which is responsible for the conditions of Plaintiff's confinement at Rayburn (now) and EHCC (before). *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009). DPSC Secretary LeBlanc—who oversees both Rayburn and EHCC—is the appropriate Defendant to respond to these claims. *See id.* Plaintiff's official-capacity claims against all Defendants *except* DPSC Secretary

LeBlanc will be dismissed. As a result, *all* claims against Former DPSC Interim Medical Director Dr. Pam Heard, current DPSC Medical Director Dr. John Morrison, EHCC Assistant Warden Morgan LeBlanc, EHCC Assistant Warden Darryl Campbell, and EHCC Food Manager Gail Levy are now dismissed, and these Defendant will be dismissed from this action.[2]

In all other respects, the Court's analysis of Plaintiff's official-capacity claims (Counts 1 and 2) set forth in its October 26 Order remains unchanged. Now aimed at the proper respondent—DPSC Secretary LeBlanc—these claims will benefit from discovery.

---

[2] Due to inartful pleading, a short explanation is required. When introducing the Parties, the operative Second Amended Complaint states that Plaintiff pursues claims against Dr. Pam Heard and Dr. John Morrison in their official capacities only. (Doc. 64 at ¶ 9). Thereafter, however, Plaintiff includes Dr. Heard and Dr. Morrison as named Defendants to Count 4, Plaintiff's personal-capacity failure to supervise and train claim. (*Id.* at ¶¶ 92-94). Rather than addressing this confusion in his Rule 12 briefing, Plaintiff simply omits Dr. Heard and Dr. Morrison from his personal-capacity claims analysis. (Doc. 92 at pp. 18-23). This Court has often admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf. *Buchicchio v. LeBlanc*, --- F.Supp.3d ----, 2023 WL 2027809, at *10 n.6 (M.D. La. 2023) (Jackson, J.). Under the Court's Local Civil Rules, Plaintiff has abandoned his personal-capacity claims against Dr. Heard and Dr. Morrison. *See id.*

The mixed messages continue. In its introduction, the Second Amended Complaint states that Plaintiff pursues Assistant Warden Morgan LeBlanc, Assistant Warden Darryl Campbell, and Food Manager Gail Levy in their "official and personal capacities." (Doc. 64 at ¶ 9). Thereafter, however, Plaintiff lists "Morgan LeBlanc," "Campbell," and "Levy" *only* among the Defendants to Count 2, Plaintiff's official-capacity claim challenging the food options available to diabetics. (*Id.* at ¶ 84). While the federal notice pleading standard is a minimal bar, it requires *at least* that "defendants in all lawsuits must be given notice of the specific claims against them." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). Plaintiff has failed to provide Defendants Morgan LeBlanc, Darryl Campbell, and Gail Levy notice of any specific personal-capacity claim(s) against them, and his prefatory references to these Defendants' "personal capacities" will be disregarded. Moreover, Plaintiff's Rule 12 briefing also omits these Defendants from its personal-capacity claims analysis, thus abandoning any such claims. *Supra*, *Buchicchio*, 2023 WL 2027809, at *10 n.6.

### ii.  Personal-Capacity Claims For Damages (Counts 3 And 4)

Defendants invoke qualified immunity from Plaintiff's claims for damages. (Doc. 84-1 at p. 16-22). Qualified immunity shields a government official from individual liability for civil damages when the "official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Calif. v. Emmons*, 139 S. Ct. 500, 503 (2019). Its purpose is to strike a balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties" by making it possible for government officials to "reasonably anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). Put differently, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation marks omitted).

The Fifth Circuit's two-pronged test for qualified immunity asks (1) "whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," and (2) "whether the right was 'clearly established.'" *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020). A court may analyze these prongs in either order, and resolve the case on a single prong. *Id.* at 190. Importantly, "[a]lthough nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

To determine whether a constitutional or statutory right was "clearly established" at the time of the alleged violation, the Court looks for guidance from controlling Supreme Court and Fifth Circuit authority. *See McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002). "[I]n the absence of directly controlling authority, a 'consensus of cases of persuasive authority' [from other Circuits] might, under some circumstances, be sufficient to compel the conclusion that no reasonable officer could have believed that his or her actions were lawful." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 604 (1999)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Nonetheless, "[a] right is 'clearly established' only if it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Cunningham*, 983 F.3d at 191 (quotation marks omitted).

### a.  Deliberate Indifference (Count 3)

Consistent with the Fifth Circuit's remand instructions, the Court re-evaluates Plaintiff's claims of deliberate indifference to his serious medical need (diabetes) against Defendants EHCC EMT Fallon Stewart, EHCC Master Sergeant Angel Horn, EHCC Master Sergeant Rolanda Palmer, EHCC Sergeant Chermaine Brown, and EHCC Sergeant Chameka Johnson.

### 1.  EHCC EMT Fallon Stewart

Plaintiff alleges that beginning in August 2016, he repeatedly reported textbook symptoms of undiagnosed diabetes to "EMTs handling the sick call station at EHCC," including to EMT Fallon Stewart. Specifically, Plaintiff complained of

tingling, pain, numbness and cracking skin on his feet; blurred vision; shakiness, frequent urination; extreme thirst and fatigue; and rapid weight loss (sixty pounds in just three months). (Doc. 64 at ¶¶ 22-25). Finally, on November 10, 2016, EHCC medical personnel tested Plaintiff's blood-glucose, which showed that his glucose had risen to an eye-popping and "life-threatening level of nearly 900 mg/dl." (*Id.* at ¶ 32). The next day, EHCC medical personnel ordered EMT Stewart to deliver Plaintiff "to the acute treatment unit to undergo immediate treatment" for diabetic ketoacidosis. (*Id.* at ¶ 33). Inexplicably, EMT Stewart ignored this command, "and left [Plaintiff] untreated and unaware of his potentially fatal condition." (*Id.* at ¶ 34). Four days later, EHCC personnel "finally transported [Plaintiff] via ambulance to University Hospital in New Orleans to receive emergency treatment and to prevent him from slipping into a diabetic coma." (*Id.*at ¶ 34). "University doctors diagnosed [Plaintiff] with diabetes and told him he should have been dead in light of his extremely high glucose and A1C levels." (*Id.* at ¶ 35).

First, did EMT Stewart violate a clearly established right? Yes. The Eighth Amendment protects prisoners from "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104. Defendants concede that diabetes is a serious medical need, and challenge only whether Plaintiff's allegations establish deliberate indifference. Albeit a "demanding standard," deliberate indifference is satisfied upon a showing "that officials acted with malicious intent—that is, with knowledge that they were withholding medically necessary care," by, for example, refusing treatment or ignoring a prisoner's complaints. *Gibson*, 920 F.3d at 219-220. Plaintiff contends

that for months EMT Stewart knew of his reported complaints indicating undiagnosed diabetes, and that on November 11, specifically, EMT Stewart knew that Plaintiff's blood-glucose had risen to a life-threatening level. Still, EMT Stewart deliberately ignored a direct order to deliver Plaintiff to EHCC's critical care unit, leaving Plaintiff untreated for *four* days. Viewed in Plaintiff's favor, these allegations and the reasonable inferences drawn from them establish that EMT Stewart knew of Plaintiff's acute life-threatening condition—diabetic ketoacidosis—and intentionally withheld medically necessary care, thus meeting the "deliberate indifference" standard. *Cf. Easter v. Powell*, 467 F.3d 459, 464 & n.25 (5th Cir. 2006) ("deliberate indifference" satisfied based on prison nurse's four-hour failure to treat inmate complaining of severe chest pain despite knowing that inmate "had a history of cardiac problems" (collecting cases)); *accord Lewis v. Cain*, No. 15-cv-318, 2021 WL 1219988, at *42 (M.D. La. Mar. 31, 2021) (Dick, C.J.) ("The Fifth Circuit holds that, when a gatekeeper to emergency care knowingly disregards a prisoner's complaints, he acts with deliberate indifference to that [prisoner's] medical needs." (citing authorities)).

Second, did existing precedent place the constitutional question beyond debate? Again, yes. True, Plaintiff fails to direct the Court to controlling authority stating squarely that a prison official's intentional failure to respond to an inmate's *diabetic ketoacidosis* establishes an actionable Eighth Amendment medical indifference claim. But "a case directly on point" is *not* required. *al-Kidd*, 563 U.S. at 741. The real question is whether any reasonable official in EMT Stewart's position

would know that deliberately withholding critical care in the face of an acute life-threatening condition—be it diabetic ketoacidosis, heart attack, stroke, heat exhaustion, a stab wound, or any of the myriad acute life-threatening conditions that may arise in the prison context on any given day—violates the Eighth Amendment's prohibition against cruel and unusual punishment. The Fifth Circuit has *long* warned that a prison official withholding care in such situations will be open to personal liability for damages. *See, e.g.*, *Easter*, 467 F.3d at 464, n.25. Closer to the point, the Fifth Circuit *and* an overwhelming consensus of other Circuits have also held that withholding care to an inmate suffering from diabetes—even *undiagnosed* diabetes—will result in an actionable claim for damages under the Eighth Amendment. *E.g.*, *Slay v. Alabama*, 636 F.2d 1045, 1046 (5th Cir. Unit B Feb. 1981); *see also, e.g., Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016); *Sours v. Big Sandy Reg'l Jail Auth.*, 593 F. App'x 478, 486 (6th Cir. 2014); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 420 (9th Cir. 2003); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582–83 (3d Cir. 2003); *Egebergh v. Nicholson*, 272 F.3d 925, 927–28 (7th Cir. 2001); *Hunt v. Uphoff*, 199 F.3d 1220, 1223–24 (10th Cir. 1999); *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996); *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988).

In short, EMT Stewart's alleged deliberate *withholding* of medical treatment in the face of Plaintiff's diabetic ketoacidosis made it patently foreseeable that his "conduct may give rise to liability for damages." *See Anderson*, 483 U.S. at 639. Plaintiff's allegations overcome EMT Stewart's qualified immunity defense.

### 2.  EHCC Master Sergeant Angel Horn

Plaintiff's allegations against Master Sergeant Angel Horn amount to the following: after being diagnosed with diabetes, Plaintiff received his insulin and other medication at EHCC "pill call." Pill calls do not occur at regular times, and prisoners are often "forced to stand in line for extended periods of time, including outdoors and under harsh conditions," making it all but impossible to "adhere to regular medication regimens." (Doc. 64 at ¶ 58). Master Sergeant Angel Horn is one of four staff members that "manage" pill call, but she does not assist Plaintiff in determining when to refill his prescriptions, which "causes lapses" in Plaintiff's medication. (*Id.* at ¶¶ 59-60). Master Sergeant Horn has ignored Plaintiff's repeated complaints regarding expired insulin. (*Id.* at ¶ 64). Going one step further, Master Sergeant Horn has once "refused" to give Plaintiff insulin at pill call, and on several other occasions has provided Plaintiff "the wrong medication." (*Id.* at ¶¶ 64-66).

Here, again, did Master Sergeant Horn violate a clearly established right? Yes. While failing to conduct pill calls at regular hours, failing to assist Plaintiff's medication management, and even providing Plaintiff "the wrong medication" may be attributed to mere "negligence"—falling short of actionable deliberate indifference—outright refusal to treat a known serious medical need establishes "malicious intent" capable of sustaining an Eighth Amendment claim. *Gibson*, 920 F.3d at 219-20. Construing the allegations and inferences in Plaintiff's favor, at least once Sergeant Horn refused to provide him insulin despite knowing that he suffers from diabetes. Plaintiff's allegations establish a clear constitutional violation. *Id.*

And again, did existing precedent place the constitutional question beyond

debate? Yes, indeed. Here, in fact, the answer is abundantly clear. As indicated above, for forty years the Fifth Circuit has held that deliberately withholding a diabetic inmate's insulin sufficiently states an actionable claim for "personal medical mistreatment" under the Eighth Amendment. *See Slay*, 636 F.2d at 1046. And, of course, this view has been echoed by a resounding chorus of Circuits in the decades since. *See, e.g., Scinto*, 841 F.3d at 230; *Sours*, 593 F. App'x at 486; *Lolli*, 351 F.3d at 420; *Natale*, 318 F.3d at 582–83; *Egebergh*, 272 F.3d at 927–28; *Hunt*, 199 F.3d at 1223–24; *Roberson*, 198 F.3d at 648; *Weyant*, 101 F.3d at 857; *Carswell*, 854 F.2d at 457.

In sum, Master Sergeant Horn's alleged deliberate refusal to provide Plaintiff insulin to treat his diabetes made it patently foreseeable that her conduct may give rise to liability for damages. Plaintiff's allegations are sufficient to overcome Master Sergeant Horn's qualified immunity defense.

### 3. EHCC Master Sergeant Rolanda Palmer and Sergeant Chermaine Brown

Plaintiff's allegations against Master Sergeant Rolanda Palmer and Sergeant Chermaine Brown are indistinguishable from Plaintiff's allegations against Master Sergeant Horn, to the letter. (*See* Doc. 64 at ¶¶ 58-60, 64-66). Most relevant, Plaintiff alleges that Master Sergeant Rolanda Palmer and Sergeant Chermaine Brown also once "refused" to give Plaintiff insulin at pill call. (*Id.* at ¶ 65). Thus, the same analysis and result applies here: by allegedly refusing Plaintiff his insulin, Master Sergeant Palmer and Sergeant Brown exhibited malicious intent sufficient to establish deliberate indifference to Plaintiff's diabetes, making it patently foreseeable

that their conduct may give rise to liability for damages, thereby scuttling their qualified immunity defense at this stage.[3]

### 4. EHCC Sergeant Chameka Johnson

Finally, Sergeant Chameka Johnson. The allegations against Sergeant Johnson are the same as those against Master Sergeant Horn, Master Sergeant Palmer, and Sergeant Brown. (*See* Doc. 64 at ¶¶ 58-60, 64-66). But the same result does not follow here. Why? Because as noted in Defendants' Motion To Dismiss, Sergeant Johnson is *not* listed among the named Defendants in the SAC. (Doc. 84 at p. 1, n.1; *see* Doc. 64 at ¶ 9). Somehow, Plaintiff's opposition blithely ignores this deficiency, and even since filing his opposition Plaintiff has made no attempt to correct it. The Fifth Circuit holds that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344 (5th Cir. 1994). Here, Plaintiff's SAC did not incorporate his earlier pleading(s), and so the SAC terminated Sergeant Johnson as a Defendant. *See, e.g.*, *Damond v. LeBlanc*, No. 12-cv-564, 2013 WL 3490734, at *1 n.2 (M.D. La. July 9, 2013) (Brady, J), aff'd, 552 F. App'x 353 (5th Cir. 2014). Thus, Sergeant Johnson must be dismissed.

---

[3] It is of no concern at this stage that the *same* operative allegation—Defendants' refusal to give Plaintiff his insulin at pill call—sustains Plaintiff's claims against Master Sergeant Horn, Master Sergeant Palmer, and Sergeant Brown. For now, the Court's analysis is cabined by the allegations of the SAC, and, in the light most favorable to Plaintiff, the SAC alleges that on at least one occasion each of these Defendants "refused to give him insulin." (Doc. 64 at ¶ 65). Discovery will flesh out the extent to which each or all of these Defendants withheld Plaintiff's insulin. Of course, depending on what evidence turns up in discovery, these Defendants may seek dismissal of Plaintiff's claims again at summary judgment.

### b. Failure To Supervise And Train (Count 4)

Consistent with the Fifth Circuit's instructions, the Court also re-evaluates Plaintiff's "failure to supervise and train" claims (Count 4). Plaintiff pursues these claims against Defendants DPSC Secretary James LeBlanc, former DPSC Medical Director Dr. Raman Singh, EHCC Warden Timothy Hooper, EHCC Deputy Warden Stephanie Michel, and EHCC Medical Director Dr. Preety Singh.[4]

A supervisory official who is not directly involved in a constitutional violation may nonetheless be liable for his failure to adequately train or supervise his subordinates, if such failures causally result in a constitutional injury. *Buchicchio*, 2023 WL 2027809, at *13-14. A failure to supervise and train claim requires the plaintiff to show:

> (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

*Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). In this context, "deliberate indifference" means "a disregard for a known or obvious consequence of his actions." *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022)). This typically requires showing a pattern of similar constitutional violations, permitting the inference that the supervisory official deliberately chose policies causing violations of constitutional rights. *Id.*

Importantly, "[a] failure to train action requires an underlying constitutional

---

[4] As explained, *supra* n.2, the SAC also includes former DPSC Medical Directors Dr. Heard and Dr. Morrison as Defendants to Count 4, but Plaintiff omits these Defendants from his personal-capacity claims analysis, thus abandoning any such claims.

violation." *Graham v. Hodge*, 619 F. App'x 394, 395 (5th Cir. 2015) (citing *Kitchen v. Dallas County, Tex.*, 759 F.3d 468, 483 (5th Cir. 2014)). Here, as set forth above, the only remaining actionable and relevant underlying constitutional violations are those alleged against Defendant EMT Stewart (for having deliberately withheld critical acute care), and Defendants Master Sergeant Horn, Master Sergeant Palmer, and Sergeant Brown (for having refused to administer Plaintiff's insulin at pill call). Accordingly, the Court references these underlying violations *only* when assessing Plaintiff's failure to train and supervise claims.

### 1. DPSC Secretary James LeBlanc

Starting at the top, with DPSC Secretary LeBlanc. Did Secretary LeBlanc personally violate a clearly established constitutional right, opening the door to individual liability for damages? Not here. Why? Because implicit to the first element of an actionable failure to supervise and train claim is that the alleged supervisor *actually* supervised or trained the offending subordinate. *See Goodman*, 571 F.3d at 395. But Plaintiff does not allege that Secretary LeBlanc is involved in the day-to-day supervision and training of EMT Stewart, Master Sergeant Horn, Master Sergeant Palmer, or Sergeant Brown. And common sense dictates that Plaintiff *cannot* allege the Secretary's involvement at EHCC at such a granular level, where the Secretary's actual role requires him to administer a Department that oversees dozens of facilities, thousands of employees, and tens of thousands of inmates. Plaintiff's personal-capacity claim against Secretary LeBlanc must be dismissed at the first prong of the Fifth Circuit's qualified immunity analysis—for failure to allege that Secretary LeBlanc violated a clearly established right—without need to consider

16

whether existing precedent placed the constitutional question beyond debate.[5]

### 2. Former DPSC Medical Director Dr. Raman Singh

The same goes for former DPSC Medical Director Dr. Raman Singh. Here, again, Plaintiff does not allege that Dr. Singh was involved in the day-to-day training and supervision of EMT Stewart, Master Sergeant Horn, Master Sergeant Palmer, or Sergeant Brown, and common sense dictates that he was not, given his elevated role at DPSC. Plaintiff's personal-capacity claim against Dr. Singh must be dismissed at the first prong of the Fifth Circuit's qualified immunity analysis, and Dr. Singh must be dismissed from this action.

### 3. EHCC Warden Timothy Hooper

EHCC Warden Timothy Hooper is certainly closer to the action—within the same facility anyway. As such, Plaintiff's allegation that Warden Hooper "failed to properly train and supervise" EMT Stewart, Master Sergeant Horn, Master Sergeant Palmer, and Sergeant Brown is at least plausible. (Doc. 64 at ¶¶ 40, 93-94). Still, however, Plaintiff has not alleged a viable failure to supervise and train claim because there is nothing in the SAC to establish a pattern of similar constitutional

---

[5] The Court's dismissal of Plaintiff's personal-capacity failure to train and supervise claim against Secretary LeBlanc should not be confused with its analysis of Plaintiff's official capacity claims against Secretary LeBlanc, which allege unconstitutional *policies and practices* resulting in the delay and denial of insulin and other medications, and inappropriate food options for diabetics. First, "an unconstitutional failure to train is not the same as an unconstitutional failure to adopt policies; each is a distinct theory of *Monell* liability." *Buchicchio*, 2023 WL 2027809, at *14 (citing authorities). Second, Secretary LeBlanc's personal involvement obviously is not required for Plaintiff to prevail in his official capacity claims for injunctive and declaratory relief, which are, in fact, claims against DPSC. *Goodman*, 571 F.3d at 396. Third, the qualified immunity analysis does not apply to Plaintiff's official capacity claims. *See Owen v. City of Indep., Mo.*, 445 U.S. 622, 657 (1980).

violations involving EMT Stewart (or the others) that would permit the inference that Warden Hooper deliberately chose policies causing violations of Plaintiff's constitutional rights. *Crittindon*, 37 F.4th at 186. In this regard, even Plaintiff's invocation of the litigation *in Lewis et al. v. Cain et al.*, No. 15-cv-318 (M.D. La.) to establish a "pattern, practice and/or custom" of indifference to serious medical needs is unavailing because that litigation focused on medical treatment provided at the Louisiana State Penitentiary, *not* EHCC. *See Lewis v. Cain*, No. 3:15-CV-318, 2021 WL 1219988 (M.D. La. Mar. 31, 2021) (Dick, J.). The same is essentially true of *Van Nortrick v. Lavespere*, No. 18-cv-0534, 2019 WL 852121 (M.D. La. Feb. 22, 2019) and *Banks v. LeBlanc*, No. 16-cv-649, 2019 WL 4315018 (M.D. La. Aug. 27, 2019), the additional litigation identified and noticed in the Court's prior Order.

Thus, again Plaintiff's personal-capacity claim against Warden Hooper must be dismissed at the first prong of the qualified immunity analysis, and Warden Hooper must be dismissed from this action.

### 4. EHCC Deputy Warden Stephanie Michel and EHCC Medical Director Dr. Preety Singh

Finally, EHCC Deputy Warden of Medical Care Stephanie Michel and EHCC Medical Director Dr. Preety Singh. These Defendants' titles permit a plausible inference that they supervise and train EMT Stewart, Master Sergeant Horn, Master Sergeant Palmer, and Sergeant Brown. And, as above, Plaintiff alleges that these Defendants "failed to properly train and supervise" EMT Stewart, Master Sergeant Horn, Master Sergeant Palmer, and Sergeant Brown. (Doc. 64 at ¶¶ 40, 93-94). But, again, the SAC contains nothing to establish a pattern of similar constitutional

violations, thereby permitting the inference that Deputy Warden Michel and Dr. Singh deliberately chose policies causing violations of Plaintiff's constitutional rights. Plaintiff's personal-capacity failure to train and supervise claims against Deputy Warden Michel and Dr. Singh must also be dismissed at the first prong of the qualified immunity analysis, and these Defendants must be dismissed from this action.

### C. Amendment

As set forth in this Court's prior Order, Plaintiff has already amended his complaint twice, and there is nothing in the record to indicate that amending a third time would sufficiently address the additional deficiencies identified herein. As such, the Court will dismiss the additional Counts and Defendants identified herein without permitting Plaintiff the opportunity to amend again.

## III.    CONCLUSION

In sum, as a result of the Court's original Order (Doc. 136), and this Order under the Fifth Circuit's guidance on remand,

**IT IS ORDERED** that Defendants' collective **Motion to Dismiss (Doc. 84)** is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity constitutional claims (Counts 1 and 2) be and are hereby **DISMISSED IN PART**. Counts 1 and 2 may proceed against Defendant DPSC Secretary LeBlanc, only.

**IT IS FURTHER ORDERED** that Plaintiff's personal-capacity constitutional claims alleging deliberate indifference (Count 3) be and are hereby **DISMISSED IN PART**. Count 3 may proceed against Defendants EMT Stewart, Master Sergeant

Horn, Master Sergeant Palmer, and Sergeant Brown, only.

**IT IS FURTHER ORDERED** that Plaintiff's personal-capacity constitutional claims alleging failure to train and supervise (Count 4) be and are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims (Counts 6, 7, and 8) be and are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the following Defendants be and are hereby **DISMISSED** from this action: **Dr. Raman Singh; Dr. Pam Heard; Dr. John Morrison; Warden Timothy Hooper; Deputy Warden Stephanie Michel; Assistant Warden Morgan LeBlanc; Assistant Warden Darryl Campbell; Dr. Preety Singh; Gail Levy; Polly Smith; Elizabeth Gauthreaux; Jonathan Travis; and Sergeant Chameka Johnson.**

**IT IS FURTHER ORDERED** that, in all other respects, Defendants' Motion To Dismiss (Doc. 84) be and is hereby **DENIED**. In sum, the following Counts against the following Defendants remain:

- Counts 1 and 2, alleging official-capacity Eighth Amendment claims against Defendant DPSC Secretary James LeBlanc;

- Count 3, alleging personal-capacity Eighth Amendment claims against Defendants EMT Fallon Stewart, Master Sergeant Angel Horn, Master Sergeant Rolanda Palmer, and Sergeant Chermaine Brown; and

- Count 5, alleging violations of the  Americans with Disabilities Act, Americans with Disabilities Amendment Act, and Rehabilitation Act Additionally, against Defendant DPSC.

**IT IS FURTHER ORDERED** that this action be and is hereby referred to the Magistrate Judge for selection of a new trial date and, as necessary, entry of a revised

scheduling order.

Baton Rouge, Louisiana, this 13th day of April, 2023

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**